[No. 35837. Department One. April 26, 1962.]

THE STATE OF WASHINGTON, *on the Relation of John P. Kuphal, Appellant, v.* THE CITY OF BREMERTON *et al., Respondents.**

*Reported in 371 P. (2d) 37.

*Wallace & Fraser,* for appellant.

*Roy A. Holland,* for respondents.

WEAVER, J.—Relator appeals from a judgment dismissing his application for a writ of mandamus to compel the city of Bremerton to issue a building permit to him for a gasoline service station and recapping plant.

July 28, 1948, the city adopted ordinance No. 1792, a comprehensive zoning ordinance establishing a one-class business district, as defined by the terms of the ordinance and maps attached thereto.

Ordinance No. 1792, chapter IV, section 500(7), prohibits service stations ". . . closer than one hundred (100) feet to the side lines of any Residential One or Residential Two District, . . ."

Relator's property was zoned as "business" under the ordinance. He does not assign error to the trial court's finding that his property is within 100 feet of and abuts on a Residential One District on its northerly and westerly margin.

September 10, 1958, the city amended chapter IV (classifying business properties) of ordinance No. 1792 by the adoption of ordinance No. 2297. The amendatory ordinance provides for three classifications of business properties—B-1, B-2, and B-3—instead of one.

The first two designated classifications permit service stations subject to certain limitations and restrictions. In the areas designated B-3, there are no restrictions or limitations applicable to service stations. None of the three classifications under the amendatory ordinance specifically prohibit service stations within 100 feet of a residential district.

Section 2 of ordinance No. 1792 provides:

"This ordinance shall consist of the text hereof, *and* of that certain map or book of maps identified by the approving signatures of the mayor and city clerk . . . and

each and all of its terms is to be read and interpreted in the light of the contents of said book of maps. . . ." (Italics ours.)

Upon adoption of the amendatory ordinance, a book of maps reclassifying business properties into the new, authorized districts was *not* filed; and, at the time of trial, the city had not acted to reclassify business properties as authorized by the amendment.

June 6, 1959, relator applied for a building permit to construct a gasoline service station and recapping plant.[1] Refusal of the permit by the planning commission was approved by the city council.

By letter dated September 17, 1959, relator requested the planning commission to rezone his property "so as to permit the construction of a service station and tire recapping plant." This request was treated as an application to rezone relator's property from "business," under ordinance No. 1792, to "B-3," under the amendment. The city council subsequently affirmed the commission's refusal to rezone the property.

When the trial judge dismissed relator's petition for writ of mandamus, he filed a well-considered memorandum opinion in which he succinctly stated the issues before him, as follows:

"He [relator] now contends under existing ordinances he was entitled to the permit for which he applied on June 6, 1959, *as a matter of law*; and in this proceeding he does not contend that the planning commission or city council acted arbitrarily or capriciously in refusing to rezone his property. The only issue is whether Ordinance No. 1792, as amended, required the building inspector to issue a permit for a service station on June 6, 1959." (Italics ours.)

Relator's assignments of error on appeal raise the same issue—that he is entitled to a building permit under the ordinances as a matter of law. See *State ex rel. Ogden v.*

---

[1] There is no assignment of error to, or cross-appeal from, the finding of fact of the trial court that respondent concedes relator is entitled to a permit for the construction of a tire recapping plant.

*Bellevue,* 45 Wn. (2d) 492, 275 P. (2d) 899 (1954), and authorities cited.

■ We conclude, as did the trial judge, that relator's contention is without merit. In support of our conclusion, we adopt the reasoning of the trial judge expressed in his memorandum opinion.

" . . . The question, then, is which restrictions and which regulations do we apply to land which concededly under No. 1792 was within a Business District. Do we apply the standards adopted in No. 1792 for a Business District, or those for a B-1 or a B-2 or B-3 district described in No. 2297, or must it be said, as counsel for relator suggests, that until the map is revised by the city council, there are no restrictions at all.

"A partial answer, maybe a complete one, is to be found in Section 1100 et seq. of Ordinance No. 1792. Provision is there made for changes of classification either upon the petition of a land owner or by the planning commission or city council directly. Certainly the relator has the right to petition for classification of his property as B-1, B-2 or B-3. The court finds nothing in the ordinance or in the applicable law which requires the court to hold that all property formerly classified as 'Business' must now be classified as B-3, the least restrictive of the three sub-classes. The court is also satisfied that by amending No. 1792 the city council did not intend to abandon owners of business property to their own devices and permit them carte blanche in the use of their land. The only conclusion which appeals to the court as sensible is that the old standards of Chapter IV or No. 1792 still apply and will continue to apply until such property is reclassified. . . . "

The amendatory ordinance cannot be effective until the properties are reclassified according to law, and the maps are certified and recorded, as required by ordinance No. 1792.

The record does not support relator's contention that he is entitled to a building permit as a matter of law.

The judgment is affirmed.

FINLEY, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.