[No. 39255. En Banc. January 11, 1968.]

STANLEY SHELTON, *Respondent,* v. THE CITY OF BELLEVUE, *Appellant.**

*Derrill T. Bastian,* for appellant.

*Hullin, Ehrlichman, Carroll & Roberts,* for respondent.

HAMILTON, J.—The city of Bellevue, Washington, appeals from a judgment of the trial court which (a) declares Bellevue's Zoning Ordinance No. 738 void as it relates to

*Reported in 435 P.2d 949.

respondent's property, and (b) directs the issuance of a building permit to respondent. The dispositive question upon the appeal is whether the city of Bellevue, in amending its comprehensive development plan as a prelude to the adoption of zoning ordinance No. 738, satisfactorily complied with the procedural provisions of RCW 35.63.090, 35.63.100, and 35.24.220, as such relate to the necessity for a comprehensive plan, amendments thereto, certification and filing of amendatory ordinances and maps, and the publication of such amendatory ordinances and maps.

The pertinent events giving rise to this litigation may be chronicled in the following manner: The city of Bellevue was incorporated as a third class city in March, 1953. Ordinance No. 1, of the new city, created a planning commission pursuant to the authority of RCW 35.63 (originally enacted as Laws of 1935, ch. 44). The planning commission developed a comprehensive zoning ordinance for the city as it then existed. This was presented to and adopted by the city council as ordinance No. 68 on September 28, 1954. Thereafter, on October 14, 1958, the city council adopted resolution No. 761, which, without specific reference to ordinance No. 68 or any other ordinance, purports to amend and adopt a comprehensive plan for the physical development of the city. Appended to and referred to in this resolution are three maps, designated as (1) a comprehensive land use plan, (2) a comprehensive park plan, and (3) a comprehensive street plan. None of these maps embraced the area encompassing respondent's property, which area lay generally to the east of the then city limits of Bellevue.

In 1962, respondent acquired his property, which consists of a triangular shaped piece lying in the southwest quadrant of the intersection of the Bellevue-Redmond Road and 140th Avenue, N.E., and sometime in 1964 the surrounding area, including respondent's property, was annexed to the city of Bellevue. Meanwhile, and seemingly as a result of a question arising as to the efficacy of the adoption of a comprehensive community development plan by resolution rather than by ordinance, the city council, on December 15, 1964, by ordinance No. 706 ratified and re-enacted the com-

prehensive development plan set forth in resolution No. 761. Appended to ordinance No. 706 were the three comprehensive plan maps attached to resolution No. 761 plus a fourth map designated as the comprehensive pedestrian circulation plan. Again, none of these plan maps embraced the area surrounding respondent's property. The ordinance, but not the maps, was duly published on December 17, 1964, and the ordinance and the maps, respectively, were later certified and filed with the county auditor. This ordinance, among other things, asserted:

1. PURPOSE. To define and establish the policy relating to the development of the community; to indicate the principles and objectives which shall guide the development of precise plans, public and private; to provide for the coordination of the many separate plans which govern the development of the community; to officially adopt a program and guide which will enable the City to attain the objectives set forth in Chapter 35.63 of the Revised Code of Washington, in the manner provided.

. . . .

IV. MAPS.

A. *Land Use.* The Land Use Map illustrates in broad terms the foreseeable development of the City of Bellevue. The use areas shown indicate principles which are intended to guide the implementation of this development program.

Thereafter, and following hearings held in mid 1964 and early 1965, the city council on March 2, 1965, adopted ordinance No. 720, which reads:

AN ORDINANCE amending the Comprehensive Plan for the physical development of the City of Bellevue; adopting the Comprehensive Land Use Plan as received under Clerk's receiving no. 884, which includes the provisions of Comprehensive Plan Supplements No. 8A, 9 and 10; and amending Ordinance No. 706.

WHEREAS Resolution No. 761 adopted the Comprehensive Plan for the physical development of the City of Bellevue; and Ordinance No. 706 thereafter reaffirmed and re-adopted said Comprehensive Plan as then amended; and

WHEREAS said Resolution and Ordinance (1) direct the Planning Commission to continue to observe the develop-

ment of the City in relation to the Plan, and (2) direct that, where development or the absence of development indicates a condition, a problem, a new element, or expansion, unforeseen and not anticipated or appreciated by the Plan, the Planning Commission shall study the subject; and

WHEREAS the Comprehensive Plan has been amended from time to time; and

WHEREAS after due study and deliberation the Planning Commission has made recommendation of a further amendment of the Plan to the City Council; now therefore

THE CITY COUNCIL OF THE CITY OF BELLEVUE, WASHINGTON, DO ORDAIN AS FOLLOWS:

Section 1. The Comprehensive Land Use Plan adopted by Ordinance No. 706, and filed under Clerk's receiving no. 857, is hereby amended by that certain Comprehensive Land Use Plan filed under Clerk's receiving no. 884, which is by this reference made a part hereof, and which latter instrument includes the provisions of Comprehensive Plan Supplements No. 8A, 9 and 10.

Section 2. This Ordinance shall take effect and be in force five (5) days after its passage, approval and legal publication.

Attached to ordinance No. 720, as enacted, was the Comprehensive Land Use Plan adopted by ordinance No. 706, and filed under clerk's receiving No. 857, upon which had been outlined the annexed area which included respondent's property together with proposed zoning classifications. This map, as amended, then was filed under clerk's receiving No. 884. Concurrently, with the enactment of ordinance No. 720, the city council passed resolution No. 1129, by which it adopted comprehensive plan supplements Nos. 8A, 9 and 10. Ordinance No. 720, but not the maps or resolution No. 1129, was then published on March 11, 1965. Concerning certification and filing with the county auditor, the trial court found the following situation, which the record sustains and with which appellant does not seriously quarrel:

[T]he City enacted ordinance 720, adopting four maps designated Clerk's file number 884, supplement 8A, supplement 9 and supplement 10, as the Comprehensive Plan

for the new annexed area. These maps were not ever certified by the City Clerk.

The text of ordinance 720 was certified by the Clerk and filed with the County Auditor about six months after adoption.

The map designated file 884, uncertified, was filed with the County Auditor at the same time.

Maps 8A, 9 and 10 were not filed but were recorded with the County Auditor about eight days after this action was commenced. When recorded, they were in color photograph form, reduced ten times from actual size. They accompanied a copy of ordinance 720. The ordinance was certified. The photographs were not individually certified. Finding of fact No. 4.

Ordinance 720 contained a plan designated under Clerk's receiving number 884 (which is a part of the return in Exhibit C). At some time supplement 10 to the Comprehensive Plan of the City of Bellevue was adopted by the Bellevue City Council; it is a modification of the plan designated under Clerk's file 884. The colored photographs recorded in the Auditor's office included a photograph of supplement 10 but this photograph was not a duplicate of supplement 10 but included some changes of the supplement which is in evidence in this case as Exhibit "E". Finding of fact No. 5.

Against this background, and after appropriate notice and hearing, the city council, upon recommendation of the planning commission, adopted ordinance No. 738 on April 20, 1965. This ordinance, describing the areas affected by metes and bounds, reclassified and rezoned the annexed area from its former county zoning classifications to city zoning classifications consistent with the land uses outlined upon supplement 10, as reflected by exhibit No. E referred to in the trial court's finding of fact No. 5. Generally speaking, the effect of ordinance No. 738 resulted in those properties within the newly annexed area lying south of the Bellevue-Redmond highway being classified as residential and those lying north of the highway as commercial. Respondent's property, abutting the highway on the south and at the intersection of 140th Avenue, N.E., was accorded an R-S classification, which in addition to residential uses permits semipublic, nonretail uses, *e.g.*, professional office

buildings, churches, museums, clubhouses, municipal buildings, et cetera.

Conceiving that his property lent itself more valuably to a service station use than to the designated uses, respondent, together with others similarly situated, petitioned the city council in August, 1965, for a change in classification from R-S zoning to that of a business zoning. This petition was, after various hearings, ultimately denied. Thereafter, in March, 1966, respondent commenced this action, and in April made application for a building permit to erect a service station upon his property. The application for a building permit was found by the city to be deficient in that the plans accompanying the application did not reflect adequate drainage culverts and the project had not been approved by the State Department of Fisheries as required by RCW 75.20.100. These deficiencies were remedied by respondent during the course of trial.

The trial court, in voiding Bellevue Zoning Ordinance No. 738, as it pertained to respondent's property, predicated its action upon the ground that the procedural requirements of RCW 35.63 and the publication requirements of RCW 35.24.220 had not been adequately followed with respect to the adoption of the comprehensive development plan embracing the newly annexed area, which included respondent's property. Thus, the trial court reasoned, without a validly enacted development plan encompassing the annexed area the city of Bellevue was without the requisite power to enact a zoning regulation pertaining thereto.

On appeal, the city, in essence, (a) concedes it is exercising its zoning powers under and pursuant to RCW 35.63, (b) points to its initial comprehensive zoning ordinance (ordinance No. 68), singly or in conjunction with resolution No. 761 and/or ordinance No. 706, as representing a basic comprehensive plan from which flows the necessary "jurisdiction" to enact zoning regulations pertinent to its municipal territory, (c) alludes to the conceptual distinction between comprehensive municipal planning on the one hand and the imposition of zoning restrictions upon the other,

(d) asserts that procedural defects in the adoption of amendments or supplements to a basic, nonregulatory, comprehensive plan, as distinguished from the imposition of zoning regulations, cannot divest the city of its acquired zoning powers, and (e) contends that zoning ordinance No. 738 reveals or embodies a comprehensive land use plan for the annexed area.

Respondent, however, contends that (1) a comprehensive plan embracing city territory to be zoned is a mandatory and jurisdictional prerequisite to the imposition of zoning classifications, (2) such a plan must be evidenced by a distinct instrument separate and apart from implementing zoning ordinances, (3) the adoption of such a comprehensive plan must strictly follow the procedural requirements of enabling legislation, and (4) the city, in failing to comply with pertinent statutory requirements when it enacted its comprehensive plan, was without power to zone the annexed area.

At the threshold of any resolution of the conflicting viewpoints of the parties with respect to the significance or effect of the action of the city of Bellevue in adopting resolution No. 761 and ordinances Nos. 68, 706, and 720, as such relate to the city's power to enact zoning ordinance No. 738, lies the necessity for an appreciation of the distinction between the municipal functions of "planning" and "zoning."

In this respect, and in general, the distinction is recognized and commented upon in 8 E. McQuillan, Municipal Corporations § 25.08, at 31, 32, 33 (3d ed. rev. 1965), and in C. Rhyne, Municipal Law § 32-59, at 976, 977 (1957). It is succinctly spelled out in *Seligman v. Belknap*, 288 Ky. 133, 155 S.W.2d 735 (1941) at 135, as follows:

"Planning" and "Zoning" are closely related, for, in a general way, planning embraces zoning and zoning may not entirely exclude planning. However, they do not cover identical fields of municipal endeavor for the protection of the common interest and the promotion of general welfare. Broadly speaking, "planning" connotes the systematic development of an area with particular reference to the location, character and extent of streets,

squares, parks and to kindred mapping and charting. "Zoning" relates to the regulation of the *use* of property —to structural and architectural designs of buildings; also the character of use to which the property or the buildings within classified or designated districts may be put.

Thus, it may be observed, "planning," in the broad sense, contemplates the evolvement of an over-all program or design of the present and future physical development of the total area and services of the existing or contemplated municipality. It thus embraces more than a suggested pattern of land use, for it may involve itself with a consideration of all the usual public improvements and services that go into making up and developing the modern community or urban area. By its very nature and purpose, realistic municipal "planning" is and must be comprehensive, flexible, and prospective, for it attempts to anticipate the future destiny as well as project protection for the existing social, civic, physical, and economic values of the particular municipal area involved. Logically, it must be susceptible of timely and continuing reevaluation and potential alteration if it is to keep in step with unforeseen or changing municipal circumstances, conditions, and mores. And, since it usually proposes rather than disposes, it does not ordinarily, without further regulatory implementation, in and by itself, impose any immediate restrictions upon the land area it purports to cover. Planning, as such, then in effect forms a blueprint for the various regulatory measures it suggests.

Municipal "zoning" on the other hand, is, in effect, a part of and an end result or product of effective municipal "planning," for it is through the medium of enacted and enforceable zoning regulations that the aims and objectives of the land-use-classification facet of over-all municipal "planning" may be carried to fruition. Because an ad hoc, piecemeal approach to municipal "zoning" lends itself more readily to arbitrary, capricious, unreasonable, or spot zoning situations, it follows that there must be a direct and

tangible link between over-all municipal "planning" and over-all municipal "zoning."

Difficulty in dealing with the respective functions, where it arises, comes when "planning," in relationship to "zoning," is sought to be isolated, precisely designated, and objectively envisioned in some particular or distinct written form separate and apart from the zoning measures the "planning" prompts. Especially is this so when the proposed "plan" finds its only written form of expression within the framework of the regulatory measures it induces. Thus, in speaking of the term "comprehensive plan," as commonly used in connection with "zoning" legislation, Justice Joseph Weintraub writing for the Supreme Court of New Jersey was prompted to observe, in the case of *Kozesnik v. Montgomery Township*, 24 N.J. 154, 131 A.2d 1 (1957), at 166:

> There has been little judicial consideration of the precise attributes of a comprehensive plan. *Haar, "In Accordance with a Comprehensive Plan," supra* (*68 Harv. L. Rev.* 1154). Our own decisions emphasize that its office is to prevent a capricious exercise of the legislative power resulting in haphazard or piecemeal zoning. *Speakman v. Mayor and Council of Borough of North Plainfield,* 8 N. J. 250, 256 (1951); *Raskin v. Town of Morristown,* 21 N. J. 180, 198 (1956). Without venturing an exact definition, it may be said for present purposes that "plan" connotes an integrated product of a rational process and "comprehensive" requires something beyond a piecemeal approach, both to be revealed by the ordinance considered in relation to the physical facts and the purposes authorized by R. S. 40:55—32. Such being the requirements of a comprehensive plan, no reason is perceived why we should infer the Legislature intended by necessary implication that the comprehensive plan be portrayed in some physical form outside the ordinance itself. A plan may readily be revealed in an end-product —here the zoning ordinance—and no more is required by the statute.

Although administrative wisdom, good planning practices, and the prospect of greater local zoning consistency may suggest the desirability of some definitive written articulation of a "master" or "comprehensive" plan, we are

satisfied that neither our state legislature, in enacting RCW 35.63, this court in applying that act, nor the majority of courts in interpreting comparable legislation, have compelled such a course as a condition precedent to the enactment of a comprehensive zoning regulation. *City of Medina v. Rose*, 69 Wn.2d 448, 418 P.2d 462 (1966), and Haar, *In Accordance With a Comprehensive Plan*, 68 Harv. L. Rev. 1154 (1955).

Against this general background, then, we turn to what we deem to be the two decisive questions posed by the contentions of the parties in the instant appeal, namely: (1) Is the formal, written articulation and adoption of a comprehensive municipal plan, as distinguished from a comprehensive zoning regulation, a condition precedent to the enactment of a valid zoning regulation? and (2) if a municipality does promulgate and adopt such a plan, is strict compliance with pertinent statutory procedural provisions relating to such adoption a prerequisite to the validity of subsequent and resultant zoning measures?

We think both questions must be answered in the negative.

 The negative answer to the first question flows logically from our conclusion in the case of *City of Medina v. Rose, supra,* wherein we held that a comprehensive zoning regulation could, by itself, reveal and constitute a comprehensive zoning plan, so long as it was "definite, certain, precise and clear in its terms and gave notice of its restrictions" and was "geographically comprehensive." As we have heretofore indicated, this approach is in accord with the view adopted by other courts. *See*, for example, *Kozesnik v. Montgomery Township, supra; Angermeier v. Borough of Sea Girt*, 27 N.J. 298, 142 A.2d 624 (1958); *Higginbotham v. City of the Village*, 361 P.2d 191 (Okla. 1961); and also Haar, *In Accordance With a Comprehensive Plan, supra.* Furthermore, we are of the opinion that the pertinent sections of RCW 35.63 do not compel the formal adoption of a specific and separately articulated comprehensive plan by the legislative body of a municipality. In this re-

spect, it is to be noted that the statutes, in pertinent part, provide:

> The council or board [city council or county board of commissioners] *may provide* for the preparation *by its* [planning] commission and the adoption and enforcement of coordinated plans for the physical development of the municipality. For this purpose the council or board, in such measure as is deemed reasonably necessary or requisite in the interest of health, safety, morals and the general welfare, upon recommendation by its commission, by general ordinances of the city or general resolution of the board, *may regulate and restrict* . . . . (Italics ours.) RCW 35.63.080.

> All regulations shall be worked out as parts of a comprehensive plan which each [planning] *commission* shall prepare for the physical and other generally advantageous development of the municipality . . . . (Italics ours.) RCW 35.63.090.

> The [planning] commission *may recommend* to its council or board the plan prepared by it as a whole, or *may recommend* parts of the plan by successive recommendations; . . . .

> . . . . A copy of the ordinance or resolution *adopting or embodying* such plan or any part thereof or any amendment thereto, duly certified as a true copy by the clerk of the municipality, shall be filed with the county auditor. A like certified copy of any map or plat referred to or adopted by the ordinance or resolution shall likewise be filed with the county auditor. The auditor shall record the ordinance or resolution and keep on file the map or plat. (Italics ours.) RCW 35.63.100.

We perceive, from the permissive nature of the language utilized in the foregoing statutory excerpts, that the legislature intended that the municipal legislative body be vested with power to either (a) adopt by legislative enactment, in part or in whole, an articulated comprehensive development plan, as recommended by its planning commission, as a separate and distinct instrument, or (b) content itself with embodying and carrying out a comprehensive zoning plan by way of comprehensive zoning measures.

It follows, from these alternatives, that the formal municipal legislative adoption of the comprehensive plan, as a distinct entity, separate and apart from comprehensive zoning regulations, is not a condition precedent to the enactment of zoning measures implementary of a comprehensive plan.

We come, then, to the second question, *i.e.*, whether a municipality which elects to adopt, as such, a written form of a comprehensive development plan must, as a condition precedent to enacting implementary zoning regulations, strictly adhere to pertinent statutory procedural requirements in adopting the plan. In this vein, and in respect to the events in this case, it is respondent's contention that Bellevue Zoning Ordinance No. 738 is void because the city failed to (a) timely adopt its comprehensive plan by ordinance rather than resolution,[1] (b) certify and timely file the adopted plan and accompanying maps with the county auditor as required by RCW 35.63.100, *supra*, and (c) publish maps incorporated within the adopted plan in accordance with RCW 35.24.220.[2] It is not contended, however, that the city did not publish or properly certify and file ordinance No. 738 prior to respondent's application for a building permit.

There can be no question but that strict compliance with the procedural requirements of RCW 35.63.100 is mandatory when a municipality adopts a zoning ordinance imposing classifications or restrictions upon property within its boundaries. *State ex rel. Kuphal v. Bremerton*, 59 Wn.2d 825, 371 P.2d 37 (1962); *State v. Thomasson*, 61 Wn.2d 425, 378 P.2d 441 (1963). In short, such a regulatory measure

---

[1]The legislature, by Laws of 1967, Ex. Ses., ch. 144, § 8, amended RCW 35.63.100 to permit cities to adopt such plans by resolution. Furthermore, the same act eliminated the provision relating to a city filing such resolutions or ordinances with the county auditor.

[2]"Every ordinance of a city of the third class shall be published at least once in a newspaper published in the city, such publication to be made in the city's official newspaper if there is one. If there is no official newspaper or other newspaper published in the city then publication shall be made by printing and posting the ordinance in at least three public places in the city in such manner as the city council may direct. RCW 35.24.220.

must be adopted by ordinance, it must be published, and it, as well as any maps incorporated into it by reference, must be certified and filed with the proper officer, for, as we stated in *State v. Thomasson, supra,* these steps are necessary to give the property owners and the officials who issue use and building permits knowledge of such *restrictions* as have been enacted by the legislative body of the municipality.

It does not necessarily follow, however, that such strict compliance is wholly practical or essential where a municipality, in the exercise of its discretion, elects to adopt a written articulation of a nonregulatory municipal development plan. Particularly would this seem so when, as here, the articulated plan simply proposes, rather than imposes, zoning regulations which the municipality may or may not enact and which, if enacted, must be duly adopted by ordinance and must be properly published, certified, and filed. To compel a meticulous adherence to the pertinent procedural provisions of RCW 35.63.100, under such circumstances, would appear to be unduly technical and stringent as well as duplicative in nature. In our view, a substantial compliance with the pertinent procedural provisions would appear to be all that should reasonably be necessary to accomplish the underlying public notice purposes.

In the instant case, we are satisfied, that Bellevue in enacting and publishing ordinances Nos. 68, 706, and 720, as well as passing resolutions Nos. 761 and 1129, and in filing such ordinances and resolution No. 1129 with the county auditor, along with later filing the maps alluded to in the enactments, substantially complied with the pertinent procedural requirements.

We conclude upon this score that the appellant city validly enacted zoning ordinance No. 738, as implementary to its comprehensive planning as such is embraced within ordinances Nos. 68, 706, 720, and resolutions Nos. 761 and 1129.

The judgment of the trial court invalidating ordinance No. 738 is reversed.

Respondent, in this proceeding, also alleged and asserted that as to his property the R-S classification imposed by ordinance No. 738 was arbitrary, capricious and unreasonable. The trial court, by reason of its holding and by stipulation of the parties, did not reach or pass upon this issue.

Accordingly, the cause must be remanded for such further proceedings with respect to this issue as the parties may pursue. Therefore, that portion of the trial court's judgment ordering the issuance of a building permit shall be held in abeyance and subject to the trial court's determination of the remaining issue before it.

Respondent, in the course of this appeal, moved under ROA 51 for dismissal of the appeal upon the grounds that appellant had not diligently prosecuted the same and had failed to promptly send up the record. This motion is denied. Appellant, however, shall not recover its costs on appeal.

FINLEY, C. J., HILL, WEAVER, ROSELLINI, HUNTER, and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.