29 P.3d 728 (2001)
SAMMAMISH COMMUNITY COUNCIL, a municipal corporation; and East Bellevue Community Council, a community municipal corporation, Respondents,
v.
CITY OF BELLEVUE, a municipal corporation, Appellant.
City of Bellevue, a Washington municipal corporation, Appellant,
v.
East Bellevue Community Municipal Corporation, a Washington community municipal corporation; and Sammamish Community Municipal Corporation, a Washington community municipal corporation, Respondents.
Nos. 47252-6-I, 47786-2-I.
Court of Appeals of Washington, Division 1.
August 20, 2001.
*729 Jay Palmer Derr, Samuel Wilmore Plauche, Kitteridge Oldham, Seattle, for Amicus Seattle King County.
Alan Copsey, Asst. Attorney General, Olympia, for Amicus Dept. of Comm. Trade.
Peter Dykstra, Seattle, for Amicus American Planning.
Peter Ramels, H. Kevin Wright, Seattle, for Amicus King County.
Roger A. Pearce, John Tayloe Washburn, Richard L. Settle, Seattle, Richard L. Andrews, Lori Molander Riordan, Bellevue City Attorney, Bellevue, Elaine Louise Spencer, Graham & Dunn, John Richard Aramburu, Law Offices of J. Richard Aramburu, Seattle, for Appellants.
John Aramburu, Seattle, for Respondents.
COLEMAN, J.
In these consolidated cases, we are asked to define the disapproval authority given to community councils by RCW 35.14.040. Although RCW 35.14.040 gives community councils final decision-making authority, it limits that authority to, inter alia, zoning ordinances and amendments to the comprehensive plan that apply to land, buildings, or structures within the community councils' respective geographic jurisdictions. The first issue is whether the Sammamish Community Council and the East Bellevue Community Council (the councils) had the authority to disapprove City of Bellevue Ordinance 5081, which amended the Traffic Standards Code (TSC) governing the calculation of traffic volume and traffic capacity. The second issue is whether such disapproval affects how the TSC is applied to land use developments outside the councils' respective geographic jurisdictions.
Because Ordinance 5081 is not a zoning ordinance and because changes governing the calculation of traffic volume and capacity set forth in Ordinance 5081 do not require an amendment to the comprehensive plan, the councils did not have disapproval authority. And even if they had such authority, the councils' disapproval would affect only how the TSC is applied to land use applications for developments within their respective geographic jurisdictions.

STATEMENT OF FACTS
Whenever unincorporated territory is annexed by a city, a community municipal corporation governed by a community council may be organized for all or part of the territory annexed. RCW 35.14.010, -.020. Community municipal corporations "have no inherent powers and possess only such powers as are expressly conferred by statute or implied as necessary in aid of those powers which have been expressly conferred." 2A McQuillin, Municipal Corporations, § 10.03, at 299 (3d ed.1996) (footnote omitted). The powers of the community municipal corporations in Washington are set forth in chapter 35.14 RCW. RCW 35.14.040 authorizes the community councils to disapprove specific types of city ordinances or resolutions:
The adoption, approval, enactment, amendment, granting or authorization by the city council or commission of any ordinance or resolution applying to land, buildings *730 or structures within any community council corporation shall become effective within such community municipal corporation either on approval by the community council, or by failure of the community council to disapprove within sixty days of final enactment, with respect to the following:
(1) Comprehensive plan;
(2) Zoning ordinance;
(3) Conditional use permit, special exception or variance;
(4) Subdivision ordinance;
(5) Subdivision plat;
(6) Planned unit development.
Disapproval by the community council shall not affect the application of any ordinance or resolution affecting areas outside the community municipal corporation.
....
The Growth Management Act (GMA) requires cities planning under the act to include within their comprehensive plans a transportation element that, among other things, specifies "level of service" standards for local streets and roads. RCW 36.70A.070(6)(a)(iii)(B). "Level of service" (LOS) is basically a measure of the degree of intersection saturation, expressed as the ratio of the peak traffic volume at the intersection to the capacity of the intersection to handle traffic. A LOS "standard" constitutes the ratio beyond which the intersection is deemed overly congested. Under the GMA, development is prohibited if it would cause the LOS at relevant intersections to drop below the applicable standards "unless transportation improvements or strategies to accommodate the impacts of development are made concurrent with the development." RCW 36.70A.070(6)(b).
The City of Bellevue implemented the GMA requirements through its comprehensive plan and the TSC. Before Ordinance 5081 was adopted, the City defined the peak volume of an intersection as the number of vehicle trips during the 60-minute period between the hours of 4 and 6 p.m. when traffic volume was at its greatest. To determine the traffic capacity of an intersection, the City employed "Transportation Research Circular No. 212".[1] On the recommendation of a transportation task force, however, the City amended the TSC's methods for determining traffic volume and traffic capacity by adopting Ordinance 5081 in July 1998. Under Ordinance 5081, the City measures peak traffic volume by averaging the total number of trips between 4 and 5 p.m. and the total number of trips between 5 and 6 p.m. Bellevue City Code (BCC) 14.10.010(0). And the City determines traffic capacity using "Transportation Research Board Highway Capacity Manual, Special Report 209" rather than "Transportation Research Circular No. 212." BCC 14.10.010(S). The City's rationale for amending the TSC was to change the method of calculation to more realistically assess traffic patterns in light of variable work schedules.
Both the Sammamish Community Council and the East Bellevue Community Council objected to Ordinance 5081, claiming that the new methodology would allow more traffic to occur without violating LOS standards. Thus, the councils argued, the City could effectively allow more development without having to meet the concurrency requirements of the GMA. The councils therefore disapproved Ordinance 5081, purporting to exercise their authority under RCW 35.14.040 to disapprove certain ordinances "applying to land, buildings or structures" within their jurisdictions.
The City resisted the councils' actions, claiming that Ordinance 5081 is not an enactment that the councils have the authority to disapprove. As a result, the councils brought the present suit in superior court, asserting two theories: that the ordinance effectively modified LOS standards and therefore should have been adopted as an amendment to the City's comprehensive plan, and that the councils had the authority to disapprove the ordinance under RCW 35.14.040 because it was a zoning ordinance applying to land, buildings, or structures.
The councils moved for summary judgment, and the City moved to dismiss the portion of the councils' complaint regarding *731 the comprehensive plan amendment. The trial judge granted the City's motion concerning the comprehensive plan based on the following reasoning:
It is my determination that Ordinance 5081 is not inconsistent with the comprehensive plan based on the materials that have been provided. The comprehensive plan is not so specific that it can or should require [amendment] for a computational methodology or mechanism for how to measure level of service.
Addressing the councils' remaining theorywhether the councils had the authority to disapprove Ordinance 5081 under RCW 35.14.040the trial judge concluded that Ordinance 5081 is a zoning ordinance subject to community council disapproval because it effectively allows more development than was previously allowed. Relying on this ruling, the councils contended that their disapproval requires the City to disregard Ordinance 5081 when applying the TSC to a proposed development located anywhere in the City that may impact the volume-to-capacity ratio of intersections within the councils' geographic jurisdictions. The City then sought a declaratory judgment that community council disapproval of Ordinance 5081 had no effect on the City's application of the TSC to proposed development located outside of their jurisdictions. The councils counterclaimed, seeking a declaration that:
a) the disapproval of Ordinance 5081 applies to all intersections within the geographic areas of the Community Councils and b) that the city must act to enforce the terms of the Community Councils' disapproval by applying these levels of service to intersections in Community Councils areas that existed before the Ordinance 5081 in making land use decisions.
The trial court agreed with the councils, entered a declaratory judgment in their favor, and dismissed the City's complaint. These appeals followed.

DISCUSSION

I. Zoning Ordinance Applying to Land
The City maintains that RCW 35.14.040 does not authorize the councils to disapprove Ordinance 5081. Although the City does not dispute the councils' authority to disapprove certain zoning ordinances, it argues that the TSC as amended by Ordinance 5081 is not a zoning ordinance and does not apply to land, buildings, or structures.
The term "zoning ordinance" is not defined in chapter 35.14 RCW. But zoning is commonly understood to regulate the use of property by controlling property improvements. The Supreme Court has described zoning as follows:
"[T]he regulation of the use of propertyto structural and architectural designs of buildings; also the character of use to which the property or the buildings within classified or designated districts may be put."

Shelton v. City of Bellevue, 73 Wash.2d 28, 35, 435 P.2d 949 (1968) (quoting Seligman v. Belknap, 288 Ky. 133, 135, 155 S.W.2d 735 (1941)). The Washington Real Property Deskbook similarly provides:
Zoning codes have two basic functions. First, they regulate the use of a particular property. Second, they control the dimensions of improvements that can be placed on the property, such as height, bulk, and setbacks.
Zoning codes have two parts: (1) a map of the community showing how each piece of property is classified, and (2) a text describing what is or is not allowed in each zone. Both the map and the text are enacted by local governments for their jurisdictions.
VI Washington State Bar Ass'n, Real Property Deskbook § 97.1, at 97-3 (3d ed.1996)
The relevant provisions of the TSC as amended by Ordinance 5081 direct the methodology by which traffic is measured in order to determine LOS. The TSC does not control property improvements or regulate design of buildings or the character of use to which property may be put. Ordinance 5081 clearly is not a zoning ordinance under the common definition of zoning.
The councils nonetheless urge us to conclude that Ordinance 5081 is a zoning ordinance based upon a provision in the optional *732 municipal code, which authorizes municipalities to enact ordinances providing for:
Dividing the municipality into appropriate zones within which specific standards, requirements, and conditions may be provided for regulating the use of public and private land, buildings, and structures, and the location, height, bulk, number of stories, and size of buildings and structures, size of yards, courts, open spaces, density of population, ratio of land area to the area of buildings and structures, setbacks, area required for off-street parking, protection of access to direct sunlight for solar energy systems, and such other standards, requirements, regulations, and procedures as are appropriately related thereto. The ordinance encompassing the matters of this subsection is hereinafter called the "zoning ordinance."....
RCW 35A.63.100(2). The councils argue that Ordinance 5081 is a zoning ordinance under the above definition because it divides the City into geographic "zones" and regulates land within each area. Alternatively, they contend that RCW 35A.63.100(2)'s final "such other standards" phrase makes it clear that Ordinance 5081 is a zoning ordinance under this provision.
First, while it is true that Ordinance 5081 divides the City into geographic zones, an ordinance is not necessarily a zoning ordinance simply because it divides property. For example, an ordinance that creates a school zone or a speed zone is not a zoning ordinance within the meaning of RCW 35.14.040. Second, Ordinance 5081 does not regulate the use of land, buildings, and structures within those zones. Rather, Ordinance 5081 regulates the calculation of traffic volume and capacity. The GMA's requirement that the City prohibit development if LOS at intersections drops below applicable standards without mitigation does not transform Ordinance 5081 into a zoning ordinance. And finally, Ordinance 5081 is not a zoning ordinance under the final phrase of RCW 35A.63.100(2)which refers to standards, requirements, regulations, and procedures related to the standards listed earlier in the statutebecause that phrase is not open-ended. We presume the Legislature intended to give meaning to each word in the statute. See Norman J. Singer, Statutes and Statutory Construction, § 47:17, at 273-74 (6th ed.2000) (footnotes omitted); accord Dean v. McFarland, 81 Wash.2d 215, 221, 500 P.2d 1244 (1972); see also State v. Riles, 135 Wash.2d 326, 340, 957 P.2d 655 (1998). Therefore, the "such other standards" language relates to the specific terms listed earlier in the statute, which describe traditional zoning concepts. Ordinance 5081 does not encompass the subjects that are listed conjunctively in the optional municipal code, nor does it relate to those traditional zoning concepts. We therefore conclude that Ordinance 5081 is not a zoning ordinance by virtue of any of the provisions of the optional municipal code. Because Ordinance 5081 is not a zoning ordinance, the councils do not have the authority to disapprove it under RCW 35.14.040.
The only case addressing the scope of community councils' authority under RCW 35.14.040 is City of Bellevue v. East Bellevue Cmty. Council, 138 Wash.2d 937, 983 P.2d 602 (1999). In that case, the Supreme Court recognized that RCW 35.14.040 gave community councils final decision-making authority over subjects listed in RCW 35.14.040 applying to land, buildings, or structures within their geographic jurisdictions. East Bellevue, 138 Wash.2d at 940, 983 P.2d 602. The Supreme Court did not, however, consider whether other ordinances that might impact development fell within the definition of zoning, the issue essentially before us.[2] Therefore, that case offers no guidance on whether RCW 35.14.040 authorizes the community councils to disapprove Ordinance 5081.
In sum, we reverse the trial court's declaration that RCW 35.14.040 authorizes the councils to disapprove Ordinance 5081.

II. Amending the Comprehensive Plan
The GMA requires that "[a]ny amendment or revision to a comprehensive *733 land use plan shall conform to [the GMA], and any change to development regulations shall be consistent with and implement the comprehensive plan." RCW 36.70A.130(1). As required by the GMA, the City's comprehensive plan specifies acceptable LOS standards for intersections in the City's mobility management areas and forecasts travel demands in those areas through the year 2005.
The councils argue that the modification of the method for measuring the LOS necessitates an amendment of the City's comprehensive plan. The councils' argument is flawed, however, in that Ordinance 5081 did not change the LOS standards. Rather, it simply sets forth methodology for determining whether the LOS specified in the comprehensive plan has been satisfied. The comprehensive plan does notnor must itcontain provisions regulating how LOS is measured. Comprehensive plans contain broad policy benchmarksnot specific measures designed to implement such policies; they do not specify measures by which such policies must be implemented. RCW 36.70A.030(4); Citizens for Mt. Vernon v. City of Mt. Vernon, 133 Wash.2d 861, 873, 947 P.2d 1208 (1997). Indeed, the comprehensive plan's LOS standards have never specified any measurement methodology. The measurement, administrative, and enforcement provisions have always been in the TSC as contemplated by the GMA. RCW 36.70A.070(6)(b); WAC 365-195-835. It is within the City's discretion to adopt measures that in its judgment reflect a more accurate measurement of traffic volume and capacities. The trial court correctly concluded that the City was not required to amend the comprehensive plan in order to enact Ordinance 5081. Accordingly, we affirm the trial court's dismissal of the portion of the councils' cause of action on the issue of whether it was necessary to amend the comprehensive plan.[3]

III. Effect of Disapproval[4]
Even if the councils had the authority to disapprove Ordinance 5081, that disapproval would not affect how the City applies the TSC to determine whether land use development projects located outside the councils' geographic boundaries may be approved. RCW 35.14.040 expressly states that the councils' authority to disapprove cannot "affect the application of any ordinance ... affecting areas outside the community municipal corporation." To conclude, as the trial court did, that the councils' disapproval of Ordinance 5081 prevents the City from using the methodology contained in Ordinance 5081 to approve or disapprove development outside of the community councils' jurisdictions contradicts RCW 35.14.040's clear mandate. Rather, if the councils had the authority to disapprove Ordinance 5081, that disapproval would prevent the City from using Ordinance 5081's methodology in approving or disapproving only those development projects located within the councils' respective geographic jurisdictions. While it is true that a change in the method for calculating LOS in one community council's geographic area may ultimately impact land use development elsewhere in the City, chapter 35.14 RCW does not give a community council the authority to govern approval of land use applications outside of that community council's geographic jurisdiction.[5]

*734 CONCLUSION

In summary, Ordinance 5081which changed the method for calculating traffic volume and traffic capacityis not a zoning ordinance. In addition, enactment of Ordinance 5081 did not require an amendment to the comprehensive plan. RCW 35.14.040, which authorizes community councils to disapprove certain zoning ordinances and amendments to the comprehensive plan, does not authorize the councils to disapprove Ordinance 5081. And even if they had such authority, that disapproval would only affect the application of Ordinance 5081 to development projects within the councils' respective geographic jurisdictions.[6]
In Sammamish Community Council v. City of Bellevue, we reverse the trial court's declaration that Ordinance 5081 is subject to the councils' disapproval authority and, we affirm the trial court's dismissal of the portion of the councils' claim regarding amendment of the comprehensive plan. In City of Bellevue v. East Bellevue Community Municipal Corporation, we reverse the trial court's declaratory judgment and order dismissal of that action in its entirety. Accordingly, we reverse in part and affirm in part.
KENNEDY, J., and APPELWICK, J., concur.
NOTES
[1] These methods were specified in the TSC, BCC 14.10, before the City enacted Ordinance 5081.
[2] Examples of ordinances that might impact development but do not fall within the definition of zoning include critical areas ordinances, shoreline master programs, subdivision ordinances, binding site plan ordinances, shoreline management regulations, and water rights regulations. RCW 36.70A.030(7); RCW 90.14.230; RCW 90.58.175.
[3] In view of our disposition of this issue, it is not necessary for us to decide whether the councils exhausted their administrative remedies or whether they have the statutory authority to bring a claim against the City based on an alleged violation of the GMA.
[4] Because the councils did not have authority to disapprove Ordinance 5081, the declaratory judgment determining the effect of council disapproval is a nullity and that action must therefore be dismissed. We recognize that there may be petitions for review on both the issue of disapproval authority and the effect of disapproval. We have therefore addressed the merits of this issue, assuming for purposes of that analysis that the community councils had authority to disapprove Ordinance 5081.
[5] We need not address the City's argument that the councils' disapproval of Ordinance 5081 violates the equal protection clause because this case is resolvable on other grounds. See City of Seattle v. Williams, 128 Wash.2d 341, 347, 908 P.2d 359 (1995) (explaining that an appellate court should decline to reach constitutional issues when they are not necessary to resolve the case).
[6] The City contends that the trial court erred by denying its motions to strike declarations from expert Joseph Savage because they contained legal conclusions and characterizations of the City's procedures. Because our resolution of this case rests entirely on statutory interpretation, we will not address this issue.