[No. 39750. En Banc. September 18, 1969.]

CHESTNUT HILL COMPANY et al., *Appellants*, v. THE CITY OF SNOHOMISH et al., *Respondents.**

*Reported in 458 P.2d 891.

742

*H. S. Sanford,* for appellants.

*Frank B. Carr* and *Max R. Nicolai,* for respondents.

McGovern, J.—Appellants prosecute this appeal from an order dismissing a writ of certiorari directed to the city of Snohomish and its city council following the enactment of that city's ordinance No. 987. The result of the ordinance was a zone classification of R-2 for appellants' property, thus permitting the operation of a nursing home thereon subject to a conditional use permit. Appellants sought an R-3 classification which would have allowed them to operate the home without the necessity of a permit.

Prior to purchase by the appellants in the year 1955, the property involved in this proceeding was used by the state of Washington as a tuberculosis hospital. Since then, appellants have operated a nursing home on the premises under authority of a state license. Additionally, they have admitted former mental patients to the home for purposes of assisting them in their social rehabilitation efforts.

The property in question is rectangular in shape, fronting on Terrace Avenue to the west and on a county road to the east. It is 660 feet wide and 1,386 feet deep. Until annexed

by the city of Snohomish, all of its outer boundaries adjoined county property, except for a 300-foot wide area extending along its southern border, running easterly from Terrace Avenue. Along that stretch of land it adjoined the city to the south.

Property to the west was zoned rural residential 9600 by Snohomish County. A low density residential development is thus permitted, as is the operation of a nursing home subject to a conditional use permit. Mr. K. L. Schilaty resides in that area in one of the single family residences.

The 300-foot wide strip of city property adjoining appellants' land to the south has been improved with homes since about 1960 and is zoned R-1 (single family residence). Other property to the south is undeveloped. To the north of appellants' land is undeveloped acreage and to the east is an industrial area.

July 21, 1964, when appellants' property was located outside the city limits, ordinance No. 955, a comprehensive zoning law, was adopted by the city of Snohomish.

May 4, 1965, at appellants' request, its property was annexed to the city of Snohomish by ordinance No. 974.

June 17, 1965, the city planning commission recommended to the city council that appellants' property be zoned R-2.

July 22, 1965, the city council gave notice of public hearing for the purpose of considering recommendations of the planning commission.

August 3, 1965, a public meeting of the city council regarding proposed ordinance No. 987 was held.

November 15, 1965, a new definition of nursing homes was recommended by the planning commission and, on January 18, 1966, adopted by the city council.

February 1, 1966, ordinance No. 987 was adopted by the city council. By its terms, the westerly 128 feet of appellants' property was zoned R-1 (single residence), and the remainder zoned R-2 (multiple residence), permitting the operation of a nursing home subject to a conditional use permit.

Petition for writ of certiorari to the Superior Court in Snohomish County resulted and this appeal followed its denial.

Appellants' assignments of error basically contend that: (1) comprehensive zoning ordinance No. 955 is void in that the city failed to adopt a comprehensive plan prior to the adoption of the ordinance; (2) ordinance No. 987 is void as arbitrarily and capriciously adopted, not related to the general welfare of the community and as based on a void ordinance, No. 955; (3) the appointment of K. F. Schilaty to the planning commission was an abuse of the city's police powers and deprived the appellants of a fair, honest, and impartial hearing; (4) ordinance No. 996 redefining "nursing homes" and amending ordinance No. 955, is void for failure of the city to publish notice of public hearing concerning it, and because it is discriminatory as to appellants.

The record indicates that the Snohomish City Council adopted a comprehensive zoning plan for the city on October 31, 1961. That plan was in the form of a large map of the city, scaled to size. The zoning classification of each area within the city was indicated on the map by the color ascribed to the area. A copy of that comprehensive plan map, bearing the necessary legend for purposes of identifying the zoning classifications by color, was, after adoption, filed in the office of the Snohomish County Auditor. The plan was made available to the trial court at the time of the hearing. A copy of zoning ordinance No. 955, the city's comprehensive zoning ordinance, was also produced for the court. Its extensive provisions covering the various zoning classifications, standards, permissive uses and other pertinent matters was obviously designed with the comprehensive planning map in mind. In fact the ordinance makes direct reference to the plan. Upon examining the map and the ordinance, the zoning classification of any and all property located within the city, the uses permitted, the restrictions attached to them, and the effect of such restrictions on the property is quickly ascertainable.

In *Shelton v. Bellevue,* 73 Wn.2d 28, 37, 435 P.2d 949 (1968), we stated:

[W]e turn to what we deem to be the two decisive questions posed by the contentions of the parties in the instant appeal, namely: (1) Is the formal, written articulation and adoption of a comprehensive municipal plan, as distinguished from a comprehensive zoning regulation, a condition precedent to the enactment of a valid zoning regulation? and (2) . . .

We think both questions must be answered in the negative.

The negative answer to the first question flows logically from our conclusion in the case of *City of Medina v. Rose, supra* [69 Wn.2d 448, 418 P.2d 462 (1966)], wherein we held that a comprehensive zoning regulation could, by itself, reveal and constitute a comprehensive zoning plan, so long as it was "definite, certain, precise and clear in its terms and gave notice of its restrictions" and was "geographically comprehensive." As we have heretofore indicated, this approach is in accord with the view adopted by other courts. *See,* for example, *Kozesnik v. Montgomery Township, supra* [24 N.J. 154, 131 A.2d 1 (1957)]; *Angermeier v. Borough of Sea Girt,* 27 N.J. 298, 142 A.2d 624 (1958); *Higginbotham v. City of the Village,* 361 P.2d 191 (Okla. 1961); and also Haar, *In Accordance with a Comprehensive Plan, supra* [68 Harv. L. Rev. 1154 (1955)]. Furthermore, we are of the opinion that the pertinent sections of RCW 35.63 do not compel the formal adoption of a specific and separately articulated comprehensive plan by the legislative body of a municipality.

Based on the foregoing we hold that the comprehensive zoning map and ordinance No. 955 meet the requirements of RCW 35.63 and that the assignment of error is without merit.

■ Appellants' next contention relates to the validity of ordinance No. 987, zoning their property R-2. They contend that it was first necessary to amend comprehensive zoning ordinance No. 955 so as to include appellants' property, and that the city failed to do so. The record reveals that ordinance No. 955 was amended by the adoption of ordinance No. 987. The latter provides in part:

Sec. 3. The City Council hereby directs that the zoning

746

map of the City be amended by the addition thereto of the area as described in, and zoned as determined in, Sec. 2 above under the direction of the City Clerk.

Section 2 described appellants' property. There is no merit to the assignment of error. The concurrent amendment was sufficient.

Appellants then insist that there was no showing that ordinance No. 987 was related to the general welfare of the community and is therefore void. They also contend that the city was arbitrary and capricious in adopting it. It is urged that the necessity of procuring a conditional use permit substantially reduces the value of their property because without change in the ordinance, or reclassification of the property, they will be allowed to operate the nursing home for only 25 years on the conditional use permit.

In *State ex rel. Myhre v. Spokane,* 70 Wn.2d 207, 210, 422 P.2d 790 (1967), we explained that

> [z]oning is a discretionary exercise of police power by a legislative authority. *Lillions v. Gibbs,* 47 Wn.2d 629, 289 P.2d 203 (1955). Courts will not review, except for manifest abuse, the exercise of legislative discretion. *State ex rel. Smilanich v. McCollum,* 62 Wn.2d 602, 384 P.2d 358 (1963). Manifest abuse of discretion involves arbitrary and capricious conduct. Such conduct is defined to be without consideration and in disregard of the facts. *State ex rel. Lopez-Pacheco v. Jones,* 66 Wn.2d 199, 401 P.2d 841 (1965); *State ex rel. Cosmopolis Consol. School Dist. No. 99 v. Bruno,* 61 Wn.2d 461, 378 P.2d 691 (1963). One who asserts that a public authority has abused its discretion and is guilty of arbitrary, capricious, and un-reasoning conduct has the burden of proof. *State ex rel. Lopez-Pacheco v. Jones, supra; State ex rel. Longview Fire Fighters Union, Local 828 v. Longview,* 65 Wn.2d 568, 399 P.2d 1 (1965). If the validity of the legislative authority's classification for zoning purposes is fairly de-batable, it will be sustained. *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 71 L. Ed. 303, 47 Sup. Ct. 114, 54 A.L.R. 1016 (1926).

With these rules in mind, the factual matters involved should be considered. The record furnished the trial court included among other things the minutes of the city council

and planning commission meetings, letters sent to those bodies by both opponents and proponents of the issue, exhibits and affidavits of counsel and their arguments. The record indicates that the issue was vigorously discussed and argued throughout the community; appellants even commenced a different lawsuit against Mr. Schilaty and others. At one of the council meetings one witness threatened to sue another and at the certiorari hearing in the superior court Mr. Schilaty and others unsuccessfully sought to intervene. One attorney involved in the action complained "[t]hat the attack made against Delta included such animosity against me that it seriously affected the conduct of my profession as a lawyer in the City of Snohomish." The local newspaper carried a running account of the proceedings and the public, if not directly involved, was at least well aware of all that transpired.

The primary concern of opponents to appellants' application seems to have been the rehabilitation program conducted by appellants. This program involved the rehabilitation of not only the physically handicapped, but also included a number of people with a history of emotional problems. Some of them had been confined to state mental hospitals but released as not being dangerous. They had recovered to some extent, but were in need of further assistance and rehabilitation. The protestors attributed several unfortunate, and what they described as dangerous and frightening incidents, to some of appellants' patients.

Witnesses were heard on both sides of the issue, including some doctors in the community who believed that appellants' operation was a highly desirable and worthwhile program for the community. Meetings were held by the planning commission and the city council and people had an opportunity to express themselves either for or against the zoning application. Following all of this, the city council gave as its reasons for the adoption of ordinance No. 987:

[U]nder an R3 classification, and resultant lack of limitations, restrictions or control thereof by the City of Snohomish would be inadvisable and contrary to the health, safety and welfare of the residents of the surrounding

area and contrary to the long term development of the area as residential, which the City Council finds to be its best ultimate use.

It is apparent that the issue involved was, to say the least, debatable. And we cannot say that it is either an abuse of discretion or arbitrary and capricious conduct upon the part of public officials to accept the conclusions of proponents of an honestly debatable issue, as was this. Additionally, the burden of proof is on the appellants to prove their charge, and they have not sustained that burden. *State ex rel. Myhre v. Spokane, supra.*

Appellants' next assignment of error relates to the appointment of Mr. Schilaty to the planning commission. At the time of appellants' petition for annexation, and at all times subsequent thereto, Mr. Schilaty publicly opposed appellants' efforts. He was not a resident of the city of Snohomish and his home was located directly across the street from appellants' property. His interest in the proceedings was of a highly personal nature. In spite of this he was nonetheless appointed to the city planning commission. Appellants attempted to have him disqualify himself or be disqualified, to no avail. As a member of the planning commission Mr. Schilaty voted to have appellants' property zoned R-1 (single family residence). The commission, however, voted to recommend that appellants' property be zoned R-2 (multiple family residence with the nursing home permitted upon obtaining a conditional use permit). At the city council meeting when appellants' application was considered, Mr. Schilaty again appeared and publicly argued for a total R-1 classification—again to no avail.

■ Mr. Schilaty's official position was that of a member of the 11-man planning commission, a governmental body whose recommendations to the city council are not binding. In fact the planning commission refused to follow Mr. Schilaty's recommendation of an R-1 classification for all of appellants' property. When he appeared before the city council and expressed his views, that appearance constituted nothing more than a minority report of the planning commission.

Both the appointment of Mr. Schilaty to the planning commission and his refusal to disqualify himself from the commission hearings were inappropriate. He was an outspoken, vigorous opponent of appellants' petition, yet was a participating member of the municipal body that had the responsibility of recommending action to be taken by the city council. That participation by him raises the issue of whether appellants were afforded a fair hearing.

Appellants refer us to a series of cases standing for the general proposition that a member of a governmental body who has a direct personal interest in a matter pending before that body may not vote on the matter without invalidating the measure. See Smith v. Centralia, 55 Wash. 573, 104 P. 797 (1909); McNamara v. Borough of Saddle River, 64 N.J. Super. 426, 166 A.2d 391 (1960); Annot., 133 A.L.R. 1257 (1941). And compare S & L Associates, Inc. v. Washington Township, 61 N.J. Super. 312, 160 A.2d 635 (1960). Those cases are not determinative. Since Mr. Schilaty was not a member of the city council and had neither the right to participate in its deliberations nor cast a vote in its determination, the principle enunciated in those decisions is not applicable.

Our review of the record also satisfies us that the enactment of ordinance No. 987 was sufficiently related to the general welfare of the city of Snohomish so as to justify its adoption and was not the product of arbitrary and capricious conduct by the city council. The existing presumption of proper and regular conduct by the city's legislative body was not effectually rebutted. Bishop v. Town of Houghton, 69 Wn.2d 786, 420 P.2d 368 (1966).

And, finally, appellants argue that ordinance No. 996 was adopted by the city without the necessary publication of notice of hearing before the planning commission and is therefore void. An examination of the record indicates otherwise. Notice of the commission hearing to be held on November 15, 1965, was published on November 6, 1965, as required by the ordinance being amended. Notice of the public hearing to be held by the city council on January 4,

1966, concerning possible amendments to the ordinance, was published on December 23, 1965.

Nor is ordinance No. 996 discriminatory. It applies equally to all nursing homes within the city. *See State ex rel. Smilanich v. McCollum*, 62 Wn.2d 602, 384 P.2d 358 (1963).

In appearance, procedure and substance, appellants were afforded due process. The remaining assignments of error are equally without merit.

The judgment is affirmed.

ALL CONCUR.

---

October 30, 1969. Petition for rehearing denied.

*Reported in 458 P.2d 889.