[No. 42259.    En Banc.    April 20, 1972.]

CHARLES E. BUELL et al., Appellants, v. THE CITY OF BREMERTON et al., Respondents.

*Derrill T. Bastian,* for appellants.

*Richard U. Chapin, Johnson, Inslee, Best & Chapin, Gary Sexton,* and *Walgren, Sexton & Kamps,* for respondents.

UTTER, J.—Charles E. Buell and his wife, representatives of other neighbors in a class action, appeal from a judgment which dismissed their petition for certiorari to review action of the City of Bremerton rezoning property adjacent to them from residential to commercial. The issues presented for this court's determination are whether the doctrine of laches prevents appellants from challenging the validity of a 1966 action rezoning a portion of the property; whether a potential benefit to a member of the planning commission accruing from the rezoning voids the subsequent actions of the city council in 1966 and 1971; and whether the rezoning, in 1971, of a portion of the property was illegal spot zoning.

We hold that the appellants are prevented by the doctrine of laches from challenging the 1966 rezone; that the 1971 rezone is void inasmuch as the appearance of fairness is not maintained by virtue of a potential benefit to one of the planning commission members; and that the 1971 rezone, if otherwise valid, would not have constituted illegal spot zoning.

The Buell home, which they purchased in 1954, is located approximately 400 feet from the rezoned property. The trial court found that, in 1957, 10 of the disputed 15 acres were zoned for commercial purposes by Kitsap County, and a number of small buildings were constructed on the site. On July 21, 1965, the property was annexed to Bremerton. A zoning ordinance was then adopted, zoning all annexed land as residential. On March 30, 1966, Bremerton created a planning commission and planning ordinances were passed. The city, at that time, elected to exercise their zoning power under article 11, sections 10 and 11 of the Washington State Constitution.

On April 21, 1966, a comprehensive plan was adopted for the city showing that an area on the subject property, approximately 2 or 3 acres in size, was planned for

neighborhood business.On September 26, 1966, after publication of notice of a hearing, the city council rezoned the property to commercial zoning and subsequently published the ordinance in full after its adoption. In 1967 and 1968, building permits for a car wash and an addition to the office building on the property zoned commercial in 1966 were granted.

A public hearing was held in August of 1971 before the planning commission to consider a reclassification of an adjacent 5 acres from residential to commercial. A map is included to illustrate the area in dispute. The commission reported favorably to the council on the proposed rezone, and on August 11, 1971, the city council passed an ordinance expanding the original commercial zoning area by the additional 5 acres.

### Chronology of Commercial Zoning

ALL PROPERTIES ZONED R-1 UPON ANNEXATION ORDINANCE 2637, JULY 21, 1965

ZONED B-3, ORDINANCE 2705, SEPT 28, 1966

ZONED B-3, ORDINANCE 2966, AUG 11, 1971

The Buells assigned numerous errors to the procedure followed in the 1966 rezoning, including the presence on the planning commission of Mr. E. Jennings Beard, whose property was benefited by the rezoning. These challenges were first made in 1971 in the action now before this court.

■ Laches may constitute a defense to a petition of certiorari to review decisions of planning boards or other governing boards and commissions in zoning where suit is brought by individuals against owners of adjoining or nearby property. 8A E. McQuillin, *Municipal Corporations*, § 25.317, at 402 (3d ed. 1965); 3 A. Rathkopf, *The Law of Zoning and Planning*, § 67, at 20 (3d ed. 1971).

■ The elements of laches are: (1) knowledge or reasonable opportunity to discover on the part of a potential plaintiff that he has a cause of action against a defendant; (2) an unreasonable delay by the plaintiff in commencing that cause of action; (3) damage to defendant resulting from the unreasonable delay. None of these elements alone raises the defense of laches. Laches is an implied waiver arising from knowledge of existing conditions and acquiescence in them. *Pierce v. King County*, 62 Wn.2d 324, 382 P.2d 628 (1963); *Edison Oyster Co. v. Pioneer Oyster Co.*, 22 Wn.2d 616, 157 P.2d 302 (1945).

The Buells concede that laches bars any challenge they may have to businesses already present on the disputed property, pursuant to the 1966 rezoning. Their challenge appears to be directed to the validity of the commercial classification for the property zoned in 1966 but unoccupied by specific buildings. The record establishes actual or constructive knowledge on the part of the Buells of the commercial zoning of the 10 acres. The combination of publication of notice of a public hearing, publication of the entire ordinance in the newspaper, and issuance of building permits on two separate occasions gave the Buells constructive, if not actual, notice of the change in zoning classification of the entire property. Mrs. R. J. Smith, the owner of the parcel, spent $35,000 on future development plans, in reliance on the validity of the commercial zoning for the

initial 10 acres. Mrs. Smith, by commercial development of a portion of the parcel she owned, in a manner inconsistent with residential use, put adjacent property owners on notice of possible further development of the remainder of that parcel within the limits of the 1966 ordinance. The findings of fact and conclusions of law affirmatively finding laches are supported in the record by the indications of delay by the Buells and prejudice to Mrs. Smith.

■ The validity of the 1971 rezoning is challenged on the basis that the actions of the planning commission and city council were void because the chairman of the planning commission was indirectly benefited by the rezoning. The appearance of fairness doctrine has received recent emphasis in our decisions regarding zoning. Basic to this is our recognition that restrictions on the free and unhampered use of property imposed by planning and zoning compel the highest public confidence in governmental processes bringing about such action. Members of commissions with the role of conducting fair and impartial fact finding hearings must, as far as practicable, be open-minded, objective, impartial, free of entangling influences and capable of hearing the weak voices as well as the strong. *Chrobuck v. Snohomish County,* 78 Wn.2d 858, 480 P.2d 489 (1971); *Smith v. Skagit County,* 75 Wn.2d 715, 453 P.2d 832 (1969). It is important not only that justice be done but that it also appear to be done, as noted in Justice Finley's concurring opinion in *Chrobuck.*

■ The importance of the appearance of fairness has resulted in the recognition that it is necessary only to show an interest which might have influenced a member of the commission and not that it actually so affected him. *RK Dev. Corp. v. Norwalk,* 156 Conn. 369, 242 A.2d 781 (1968); *Kovalik v. Planning & Zoning Comm'n,* 155 Conn. 497, 234 A.2d 838 (1967); *Josephson v. Planning Bd.,* 151 Conn. 489, 199 A.2d 690 (1964); *Daly v. Town Plan & Zoning Comm'n,* 150 Conn. 495, 191 A.2d 250 (1963).

A single act or set of circumstances casting suspicion can be as damaging as an entire course of conduct of the nature

present in *Chrobuck*. This is recognized by the bylaws of the Bremerton Planning Commission which provide:

### CONFLICT OF INTERESTS

A commission member to whom some private benefit may come as the result of some public action, should not be a participant in that action. The private benefit may be direct or indirect and in either case, the possibility, not the actuality of a conflict of interest should govern. A commission member experiencing a conflict of interest should declare his interest publicly and if he is a voting member he should abstain from voting on the matter.

■ These bylaws give recognition to existing law relating to the right to challenge a member of an administrative tribunal exercising judicial or quasi-judicial functions. In *Chrobuck*, we found the role of a planning commission to be administrative and quasi-judicial. At least three types of bias have been recognized as grounds for disqualification of persons performing quasi-judicial functions. These are prejudgment concerning issues of fact about parties in a particular case;[1] partiality evidencing a personal bias or personal prejudice signifying an attitude for or against a party as distinguished from issues of law or policy;[2] and, as alleged in this case, an interest whereby one stands to gain or lose by a decision either way.[3] 2 K. Davis, *Administrative Law Treatise*, § 12.01 (1958); *State ex rel. Beddall v. Lonctot*, 62 Wn.2d 845, 384 P.2d 877 (1963); *State ex rel. Caffrey v. Superior Court*, 72 Wash. 444, 130 P. 747 (1913); *State ex rel. Barnard v. Board of Educ.*, 19 Wash. 8, 52 P. 317 (1898).

■ There is some question raised as to whether Mr. Beard actually voted during the planning commission session regarding the 1971 rezone. The minutes of the meeting reflected that he did vote. These minutes were later approved without change. At trial, testimony was presented

---

[1] *Mills v. Town Plan & Zoning Comm'n*, 144 Conn. 493, 134 A.2d 250 (1957).

[2] *Low v. Madison*, 135 Conn. 1, 60 A.2d 774 (1948).

[3] *Zell v. Roseland*, 42 N.J. Super. 75, 125 A.2d 890 (1956).

that the secretary erroneously recorded Mr. Beard's vote, and the trial court found that he did not vote. The official records of a public body may not be impeached in the absence of fraud. *State ex rel. Grimmer v. Spokane,* 64 Wash. 388, 116 P. 878 (1911).

Even if Mr. Beard, in his role as chairman, did not vote, he was found by the court to have a possibility of interest by virtue of the appreciation in his property values resulting from the 1971 rezoning. He could not be expected to hear the weak voices as well as the strong, and most certainly could not appear to the public to be able to do so. *Chrobuck v. Snohomish County,* 78 Wn.2d 858, 480 P.2d 489 (1971). The fact that the action carried without the necessity of counting his vote is not determinative. The self-interest of one member of the planning commission infects the action of the other members of the commission regardless of their disinterestedness. *Hochberg v. Freehold,* 40 N.J. Super. 276, 123 A.2d 46 (1956). The recommendation of the planning commission to the city council could not be assumed to be without impact on the council. More importantly, it would not appear to the affected public that it was without impact, and Mr. Beard's actual financial gain is sufficient to invalidate the entire proceeding. Our holding in *Chestnut Hill Co. v. Snohomish,* 76 Wn.2d 741, 458 P.2d 891 (1969), that the improper action of a planning commission member does not invalidate a proceeding where the final action is by the city council is overruled.

In the event a petition to rezone the 5 acres adjacent to the already existing commercially zoned property is again presented, we believe it would be of assistance to the parties to express our opinion on the contention of appellants that the action of the city constituted illegal spot zoning. The essence of this claim is that it is contrary to the views designated in the comprehensive plan in that the plan delineated the area as appropriate for a neighborhood shopping center, later defined in the plan to be "the smallest shopping center proposed . . . [which] may range from three to six acres . . ."

■  In *Smith v. Skagit County,* 75 Wn.2d 715, 743, 453 P.2d 832 (1969), we have defined spot zoning to mean

> arbitrary and unreasonable zoning action by which a smaller area is singled out of a larger area or district and specially zoned for a use classification totally different from and inconsistent with the classification of surrounding land, and not in accordance with the comprehensive plan.

In order to disturb the action of the city council it must be found that they acted in an arbitrary and capricious manner which we have defined as being willful and unreasonable action, without consideration and a disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration though it may be felt that a different conclusion might have been reached. *Bishop v. Houghton,* 69 Wn.2d 786, 420 P.2d 368 (1966).

■  Deviation from a comprehensive plan by increasing the area in which particular use is permitted is not automatically spot zoning. Each case must be decided on its own facts. A comprehensive plan is a blueprint which suggests various regulatory measures. It usually proposes rather than disposes. We also agree with the views on this matter expressed in *Sharninghouse v. Bellingham,* 4 Wn. App. 198, 480 P.2d 233 (1971); *Shelton v. Bellevue,* 73 Wn.2d 28, 435 P.2d 949 (1968).

Although the comprehensive plan did not specifically provide for a use of the nature granted in the 1971 rezoning, the record does not support the claim that their action was arbitrary and capricious. A planning department staff report, which indicated study in depth on the matter, concluded the enlargement of business zoning was in conformance with the comprehensive plan and recommended it to the planning commission with certain conditions attached regarding screening the center from the residential property.

The action of the city council in rezoning 5 acres in 1971 from residential to commercial was based upon improper

action by the planning commission and the judgment of the superior court is reversed insofar as it affirms the City of Bremerton in that rezoning action.

HAMILTON, C.J., FINLEY, ROSELLINI, HALE, STAFFORD, and WRIGHT, JJ., concur.

NEILL, J. (partial dissent)—I do not join in the overruling of *Chestnut Hill Co. v. Snohomish,* 76 Wn.2d 741, 458 P.2d 891 (1969), by today's opinion. That case was a unanimous opinion by this court, yet it is overturned almost before the ink is dry on the published opinion.

There are some differences in relevant facts between *Chestnut Hill Co.* and the case at bench, but in essence both cases involve actions by a planning commission having only recommendary powers; in both a member of the planning commission was alleged to have an interest, making his participation inappropriate; and in both the city council, independently and after investigation on its own, amended the zoning ordinance by reclassification of particular areas. If the council were bound by the recommendation of the planning commission, or if council action were based on the planning commission's recommendation without further investigation and inquiry by the council as an independent body, *Chestnut Hill Co.* would be inapposite.

I believe the "appearance of fairness" issue was properly viewed by the trial judge who stated in his oral memorandum opinion:

> The fourth point is that there was a conflict of interest resulting in an appearance of impropriety, and that that was fatal to the ordinance's validity. E. Jennings Beard heads a real estate firm which offices on property he owns at Pearl and Wheaton Way. This property adjoins the Smith property. It was zoned B-3 by Bremerton long prior to Mrs. Smith's petition for rezoning these five acres.
>
> Mr. Beard is Chairman of the Planning Commission, and presided over the public hearing of June 16, 1971. He did not vote on the matter of the Smith rezone, however, but he did participate in the meeting.
>
> Under the By-laws of the Planning Commission, Mr.

Beard should have disqualified himself and not partici-
pated in the meeting. This is not because he actually
stood to receive some benefit by the Smith rezone, be-
cause there has been no evidence of that as such intro-
duced here; but because the By-laws provide that a
member to whom some private benefit may come, direct
or indirect, even possibly, should not participate. The
Court does not find that Mr. Beard has or will receive
any benefit, but does recognize the possibility property
value-wise does exist.

With those findings, then, does his participation, even
though he didn't vote, in the Planning Commission public
hearing, invalidate the ordinance. His participation, I
must observe, was open; certainly there was nothing se-
cret or hidden about this; his ownership of the adjoining
parcel was a well known fact to the residents of the area;
and they are the people we are here concerned with
because they are the ones that are asking to have the
rezone upset. Yet no one objected to the part he played
in the meeting. No one there asked him to disqualify
himself. No one asked the City Council for a public hear-
ing concerning his participation.

This case factually, then, is far different from the
Chrobuck case. There a challenge both during and after
commission hearings was rejected. The Court there says
something very interesting. At page 893 of that opinion
—because you will remember there were more chal-
lenged actions than just a single meeting, a single inci-
dent. The Court says:

"Based upon the cumulative impact of the foregoing
circumstances,"
the hearings lacked the requisite appearance of fairness,
which implies at least to this Court that they considered
the number of actions and the cumulative effect of them,
and didn't find that a single action would necessarily
eliminate the appearance of fairness and require invali-
dating the activity of the commission.

What's the reason? I think we have to come to the
heart of this thing. The reason the public hearings are
held. Well, there are certainly more reasons than one. I
don't mean to be simplistic about it, but I think the
primary reason is to allow interested parties to voice
their views about any contemplated action by the Plan-
ning Commission. Were it not for the opportunity for
them to object or to concur in the contemplated action by

the Planning Commission, there would be no need to have a public hearing. Is there any claim that this was not allowed in this hearing? Is there any claim that Mr. Beard interfered with their presentations in this hearing? I find nothing in the record of that nature. Can there be any valid claim that Mr. Beard unduly attempted to inflict his point of view on the other commission members? I have read the fragmented transcript and I cannot find from what he said that this in any way was an attempt to pressure or push his point of view on the others.

The recommendation of the Planning Commission was treated as just that, and I think this is very important,—a recommendation. Obviously the Council did not accept it blindly, and I point to the fact that at least one of the Council members made an on-site visit and that there were independent discussions regarding the access problem. The matter was not accepted, the motion was not passed, at the first meeting they had on this; but instead there was a continuance to another date to allow them time to make an investigation.

The Court concludes, therefore, that Mr. Beard's participation was inappropriate, but does not void the zoning ordinance passed by the City Council. There is a legal presumption that an ordinance is valid and reasonable until one attacking it makes an affirmative showing to the contrary. This burden of proof is a heavy one and requires clear, cogent and convincing evidence to sustain it. In the absence of an affirmative showing to the contrary, it is presumed that the mandatory provisions of the law were duly observed, in substance at least, in the ordinance's enactment.

I am in disagreement with the hard burden enunciated by the trial court in the final quoted paragraph. I have previously expressed my view that a proper "appearance of fairness" standard would be to the effect that "suspicious circumstances yielding a definite appearance of unfairness can be sufficient to counterbalance the usual presumption of due and proper zoning enactments and place a burden on the zoning agency to show that the proceedings were fair in fact." *Chrobuck v. Snohomish County*, 78 Wn.2d 858, 876, 480 P.2d 489 (1971) (dissenting opinion). Here it seems to me that the independence of the council in enacting the

zoning ordinance was sufficient to prevent nullification of that ordinance on "appearance of fairness" grounds.

I have previously expressed my objection to the "appearance approach" being taken by this court as a "subjective and personal, not a legal, standard." *Chrobuck*, at 877. Today's majority opinion seems to go even farther, preempting for courts the prerogative of curing the perceived "appearance of unfairness" in others. In my view, zoning matters are primarily legislative or administrative in nature. Legislative bodies, acting independently, are surely as capable as courts of removing any collateral taint of unfairness. The majority opinion, in precluding that possibility, applies a more limited respect for legislative and administrative functions than I believe appropriate.

Even if, by judicial fiat, the entire zoning process is to be regarded as "quasi-judicial" and thus subject to the strict standards of conduct applied to courts, some standards more definite than the present "appearance of fairness" test should be established. As it is, public officials are left floundering, impressed with the duty to act, but subject to the ultimate possibility that some part of the entire process, however remote and collateral, will somehow be regarded by courts as "appearing unfair." In the highly sensitive field of zoning, bordering on a taking of private property rights for the benefit of the community, more objective and reckonable standards should be enunciated.

I would affirm the trial court as to both the 1966 and 1971 rezone ordinances.

HUNTER, J., concurs with NEILL, J.