129 N.J. Super. 170 (1974)
322 A.2d 501
HILL HOMEOWNERS ASSOCIATION, A CORPORATION OF THE STATE OF NEW JERSEY, BRUNO BARBARESE AND VELIA BARBARESE, HIS WIFE, AND JOSEPH WEINSTOCK AND HILDA WEINSTOCK, HIS WIFE, AND MARTIN L. HELFGOTT AND ESTHER HELFGOTT, HIS WIFE, PLAINTIFFS,
v.
ZONING BOARD OF ADJUSTMENT OF THE CITY OF PASSAIC, ELIAS DRAZIN AS BUILDING INSPECTOR OF THE CITY OF PASSAIC, MAYOR AND COUNCIL OF THE CITY OF PASSAIC AND HARRY STANFORD, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 3, 1974.
*174 Mr. Marvin A. Stern for plaintiffs.
Mr. Otto F. Blazsek for defendant Zoning Board of Adjustment of the City of Passaic.
Mr. Leonard Bitterman for defendants Elias Drazin, as Building Inspector, and Mayor and Council of the City of Passaic.
Mr. Harry Kampelman (Mr. Steven E. Pollan, on the brief), for defendant Harry Stanford.
SCHWARTZ, L., J.C.C., Temporarily Assigned.
Plaintiffs challenge the approval by the Board of Adjustment of the City of Passaic of an application under the provisions of N.J.S.A. 40:55-39(c) for variances permitting the construction of an apartment house on premises at the corner of Aycrigg Avenue and High Street in accordance with building plans which failed to conform to the zoning ordinance *175 in the area of side yard, parking spaces and floor area ratio regulations.
The building plans provided for 252 apartments and various facilities to accommodate the tenants on a plot of land containing 85,750 square feet. The testimony proferred by the applicant related to elevator service, preservation of greenery, water supply, auxiliary power system, garbage collection and ventilation and, in fact, these facilities became the subject of various conditions imposed by the board.
However, no testimony was offered that an apartment building of smaller dimensions which could accommodate side yards, parking spaces and floor area ratio in conformance with the zoning ordinance, could not be readily constructed on the site. Nor could the evidence support a finding that other permitted structures in this zone were not reasonably feasible on a tract of this size. Dissenting opinion of Judge Kolovsky, Shell Oil Co. v. Shrewsbury Zoning Bd. of Adj., 127 N.J. Super. 60 (App. Div. 1973), aff'd o.b. 64 N.J. 334 (1974).
If the argument is that a building of smaller dimensions or fewer apartments would not be as profitable, it is fundamental that mere economic hardship is not a sufficient special circumstance upon which to ground a variance. Wilson v. Mountainside, 42 N.J. 426, 451 (1964); Bern v. Fair Lawn, 65 N.J. Super. 435, 450 (App. Div. 1961).
There is no showing in the record of any exceptional narrowness, shallowness or shape of the plot, exceptional topographic condition of the land or any other physical condition thereof which would cause undue hardship or peculiar or practical difficulties to the applicant if the provisions of the ordinance were enforced. There is nothing in this property which is unique to it, differentiating it physically from other property in the zone. Isko v. Livingston Tp. Planning Bd., 51 N.J. 162, 174 (1968).
The plot is not undersized under the terms of the ordinance. The applicant seeks to shoehorn an oversized structure into an area not large enough to accommodate the parking *176 and side yard requirements. The personal hardship does not constitute sufficient ground for the granting of a variance under subsection (c).
The pretrial order refers to legal issues arising from an area of testimony which has not been heretofore reviewed in any reported decision in this State and which is ripe for the court's consideration in the light of the widespread practice of admitting similar evidence which prevails in many municipalities.
The president of the planning board was called as a witness at the instance of the board of adjustment. He was not qualified as a planning expert but recited the minutes of the planning board meeting at which plaintiff had applied for and was granted site plan approval of this project, in accordance with its authority under the local zoning ordinance.
The planning board record, in addition, contained the recommendation that a variance be approved by the adjustment board for the proposal which was deficient in the area of the floor area ratio, side yard and parking spaces requirements of the ordinance.
The report and recommendation of the planning board presented in a variance hearing gives rise to the issues of whether the application for site plan approval should precede or succeed the variance hearing; whether the impartiality of the quasi-judicial board of adjustment is tainted when influenced by a planning board decision and recommendation, and whether site plan applications are statutorily cognate to functions of the board of adjustment rather than the planning board.

I
Unless the premises and the structure which are the subjects of an application for site plan approval conform in all respects to the zoning ordinance, or unless the situs and the proposed construction decisionally conform by grant *177 of the adjustment board (or governing body under a (d) variance), the consideration of site plan approval is premature.
A site plan reviewing board (the planning board in Passaic) cannot require an applicant to place any structure, whether it is a principal structure or accessory building, or whether it is parking or driveway pavement or barrier, etc., in such a position that it violates the provisions of a zoning ordinance or the terms of a variance.
Until the board of adjustment expresses in its resolution the nature of the adjustment or deviation from the zoning ordinance permitted by it, the site plan reviewing board cannot determine if its requirements will impinge upon the permission vested or conditions imposed by the adjustment board by virtue of its superior statutory authority. Further, any recommendation it makes to the board of adjustment is an impropriety to which we will later advert.
Site plan applications should not be entertained until after the zoning authorities have resolved applications for variance when they are required.

II
Since the adjustment board had elicited the report and recommendation of the planning board, we cannot assume it was uninfluenced by the latter's advice and advocacy. We hold that the action of the planning board, in recommending approval of the variance application, constituted an unlawful intrusion, though solicited, upon the quasi-judicial responsibility borne by the board of adjustment when it sat as an administrative agency to determine if the applicant's situation warranted zoning adjustment by variance.
While strict rules of judicial procedure are not imposed and the adjustment board is not bound by strict rules of evidence, its judgment must be substantially grounded in competent evidence (Stolz v. Ellenstein, 7 N.J. 291, 295 *178 (1951)), arising from examination and cross-examination of witnesses, unless waived. Experts may testify, but mere reports, recommendations, letters, affidavits or petitions cannot be made the basis of the board's judgment. The board must engage in the judicial excursion of deriving ultimate facts from the basic factual determinations it has reached from the competent evidence adduced. Tomko v. Vissers, 21 N.J. 226 (1956).
In West Milford Tp. Planning Bd. v. Tp. Council, 123 N.J. Super. 135, 144 (Law Div. 1973), the court marshalled decisions analogizing the authority of courts of general jurisdiction to administrative tribunals with quasi-judicial powers and pointed out that their function partakes of the judicial even though their exercise is styled "quasi-judicial"; that the statutory scheme was to keep the boards of adjustment independent of other municipal agencies; that the board of adjustment was a statutory creation for the effectuation of legislative policy, rather than being an agent of the local governing body; that the municipal agencies sitting as quasi-judicial boards are to apply our Rules of Court in considering the timeliness of appeals.
The court, to further clarify the character of this board, also quoted from 4 Cooley, Taxation (4 ed. 1929), § 1621 at 3239, which referred to tax assessors but which applies to this case with equal force:
They who are intrusted to judge ought to be free from vexation, that they may determine without fear; the law requires courage in a judge, and therefore provides security for the support of the courage. * * * And this principle of protection is not limited in its application to the judges of courts, but extends to all officers who have duties to perform which in their nature are judicial, and which are to be performed according to the dictates of their judgment.
It may not be inappropriate to further catalogue some of the more significant protocols and the status of boards of adjustment in the legislative scheme:
*179  Not only must the board be judicious in its judgments but, as the court stated in State v. Dowling, 5 N.J. Misc. 180, 135 A. 798 (1927), it must act judicially.
 If the proceedings before the board lack recognized elements of a judicial inquiry and impartiality, they will be set aside. Hendey v. Ackerman, 103 N.J.L. 305 (Sup. Ct. 1927); Siegel v. Newark Bd. of Adjust., 137 N.J.L. 423 (Sup. Ct. 1948).
 As in judicial proceedings, res judicata is applicable to actions heard by the board, if circumstances have not changed. Russell v. Tenafly Bd. of Adjust., 31 N.J. 58 (1959).
 A quasi-judicial procedure has such judicial attributes that an absolute privilege extends to communications made by an objector as it does when made before a court, when it is pertinent to the questions legitimately to be decided. J.D. Const. Corp. v. Isaacs, 95 N.J. Super. 122 (App. Div. 1967).
 While the hearing before the board is not a formal trial, it partakes of the character of a quasi-judicial proceeding which must be governed by a spirit of impartiality uninfluenced by considerations dehors the record. Kramer v. Sea Girt Bd. of Adjust., 45 N.J. 268, 284 (1965).
 Such board shall be bound in good conscience to consider the evidence, to be guided by that alone, and to reach its conclusion uninfluenced by extraneous considerations which in other fields might have play in determining purely executive action. Penn. R. Co. v. N.J. State Aviation Comm'n, 2 N.J. 64, 70 (1949).
 Further, "any zoning official who permits himself to be swayed by favor or prejudice, who yields to influence, political or otherwise, who arrives at a decision otherwise than in conformity to the governing rules of law and as a reasonable conclusion of the facts before him is false to the great trust imposed upon him." (Emphasis supplied). "The Legal Background of Zoning," by Chief Justice W.M. Maltbie, *180 Supreme Court of Errors of Connecticut, 22 Conn. Bar J. 9 (1745).
These excerpts are mentioned for the purpose of stressing the impropriety of other municipal boards suggesting approval or disapproval of zoning applications, which may result in the quasi-judicial board of adjustment being improperly influenced by their judgments. Not even a court may substitute its judgment for that of the zoning board, within that body's sphere of action, in the absence of arbitrariness. Potts v. Princeton Bd. of Adjust., 133 N.J.L. 230, 238 (Sup. Ct. 1945).
In this instance the board of adjustment failed to maintain its judicial and autonomous role as the result of the solicited participation of the planning board, and its judgment was thereby prejudiced.

III
Authority of the planning board to determine site plan approval has not been seriously questioned by the courts at the highest level during recent years, despite the less than whole-hearted acknowledgment of such planning board power by the Appellate Division in Saddle River Country Day School v. Saddle River, 51 N.J. Super. 589 (App. Div. 1958), to which we will subsequently refer.
In the first reported challenge to the validity of an ordinance delegating applications for site plan approval to the planning board, the Supreme Court in Kozesnik v. Montgomery Tp., 24 N.J. 154, 178, 186 (1957), found this body was "singularly appropriate" for such reference, by authority of N.J.S.A. 40:55-1.13 which provides that the "governing body may by ordinance provide for the reference of any other matter or class of matters to the planning board."
Later in 1957, Judge (now Justice) Hall, sitting as a trial judge in Newark, etc., Cream Co. v. Parsippany-Troy Hills Tp., 47 N.J. Super. 306, 332, said, "I feel it is within the letter and spirit of authority granted by N.J.S.A. *181 40:55-1.13" for the planning board to administer site plan approval since the argument against it "seems to have been disposed of adversely to plaintiff's argument by the recent Kozesnik decision."
However, describing the span of "any other matter or class of matters," while writing for the Appellate Division the next year, in Saddle River Country Day School v. Saddle River, supra, his endorsement was less sanguine:
This language is very broad, but we think its scope is not unlimited. The device cannot be used, willy-nilly, as a catch-all or depository for just every type of municipal problem. It must be read and interpreted in the light of the context of the whole section, i.e., the broad and general subject of planning, "the planning and physical development of the municipality." In the only judicial appraisals thereof so far, it has been found a valid basis for delegating to the planning board the matter of approval of the details of site plans required by local zoning ordinances as a prerequisite to the issuance of building permits for certain special types of industrial uses, Kozesnik v. Montgomery Township, 24 N.J. 154, 178, 186 (1957); Newark Milk and Cream Co. v. Township of Parsippany-Troy Hills, 47 N.J. Super. 306, 332 (Law Div. 1957). [51 N.J. Super. at 603]
The Supreme Court affirmed this judgment in 29 N.J. 468 (1959), without commenting on this serious limitation of what had been accepted as broad authority to refer applications for site plan approval to the planning board.
Whether this board is singularly the appropriate local body to determine such matters is worthy of reconsideration by the upper courts. There are compelling reasons for concluding that the board of adjustment was designed by the Legislature for this responsibility.
Originally the building inspector had the responsibility to examine applications for building permits and site plans. Local governing bodies were concerned that the operations of such administrative officers (part-time in the vast majority of municipalities) might offend the public interest, particularly since it was not feasible to set forth in an ordinance *182 the specific requirements upon which a building inspector could readily grant or refuse a permit.
Hence, it was determined to empower a municipal board to consider whether the details of a proposed plan squared with the legislated standards in the zoning ordinances and to specify the exact terms necessary to meet the standards.
While the planning board usually deals in matters of broad systematic municipal development (Mansfield & Swett, Inc. v. West Orange, 120 N.J.L. 145, 149 (Sup. Ct. 1938)) to secure future well-balanced land use in the community and recommends zoning legislation to the governing body, it is the board of adjustment which the Legislature designed to and which characteristically weighs the details of particular and individual uses and structures so that the operation will not offend the public interest.
Site plan review calls for individual consideration and approval of each proposed use and structure.
The chronology of the enabling zoning act vis-a-vis the planning act strongly suggests that site plan review is cognate to zoning board administration and should be delegated to this board under the specific pertinent language of N.J.S.A. 40:55-39(b), providing that the board may "hear and decide ... requests * * * for decisions upon other special questions upon which the board is authorized by any such ordinance to pass."
This language appeared in L. 1948, c. 305, which gave original jurisdiction to the board of adjustment in this broad "other" zoning area, in addition to special exceptions (previously authorized), and interpretations of the zoning map.
The comprehensive Municipal Planning Act, N.J.S.A. 40:55-1.1 et seq., was not adopted until 1953. In N.J.S.A. 40:55-1.13, described in Kozesnik as the source of planning board authority to review applications for individual site plan approval, the planning board was empowered to review public projects as a precondition for public expenditure therefor. While additionally the board was authorized to *183 consider "any other matter or class of matters" referred to it by ordinance of the governing body, its powers in this respect were specifically related to "the planning and physical development of the municipality."
An application for individual site plan approval does not appear to relate to such general community-wide considerations. It is cognate to the statutory relationship between the adjustment board functions and those of the building inspector both of which administer the zoning regulations and are responsible for particular uses being harmonious with the intent of the zoning act and zoning ordinances.
This is particularly so since the only standards by which site plan applications are judged (in Passaic and in almost every municipality) are found in the zoning ordinance, which must be consistent with the purposes of the zoning statute. The board of adjustment was designed by the Legislature to provide expert discretion and judgment consistent with the purpose of the zoning statute. Rogoff v. Tufariello, 106 N.J. Super. 303, 308 (App. Div. 1969).
In the area of expertise ascribed by the court in Kozesnik to the planning board for the purpose of administering provisions of a zoning ordinance by the procedure of site plan approval (areas previously supervised by the building inspector) it is significant that the enabling Zoning Act relies upon the expertise of the board of adjustment as an appellate board to decide the "error in any order, requirement, decision or refusal made by an administrative official or agency based on or made in the enforcement of the zoning ordinance." N.J.S.A. 40:55-39(a).
Having this specialized skill, the adjustment board is highly qualified to "hear and decide * * * requests * * * for decisions upon other special questions * * *" consistent with zoning administration, such as applications for site plan approval, under its original jurisdiction provided in N.J.S.A. 40:55-39(b).
*184 The need for judicial reconsideration of the subject is suggested in 2 Rathkopf The Law of Zoning and Planning (3d ed.) c. 54 at 14:
The distinction in New Jersey between the situations in which reference may be made to a planning board as in Kozesnik and in Newark Milk and Cream Co., and when reference can only be made to the board of adjustment is not too clear, particularly in light of the language of the two statutes involved and the language and facts in the opinions in these two cases.
In L. 1924, c. 146, the more comprehensive L. 1928, c. 274, and the revision in L. 1948, c. 305 (N.J.S.A. 40:55-39 (b)), the board of adjustment was given exclusive original authority over the granting of special exceptions. Saddle River Country Day School v. Saddle River, supra, aff'd 29 N.J. 468 (1949).
For the purpose of augmenting the authority of the adjustment board in areas of zoning administration which were shown by experience since 1928 to require further attention, the Legislature in 1948 inserted in the same section (b) additional exclusive original jurisdiction to hear and decide requests for interpretation of the map and "for decisions on other special questions." Once this power was delegated, can we say that by the later Planning Act of 1953 it was intended to divest the adjustment board of this authority?
The effectuation of the legislative intent is the end to be served in the exposition of statutes. The literal import of the term "any other matter or class of matters" in the Planning Act must be given a meaning reasonably consonant with the legislative design in the area of the planning board's responsibility over the systematic planning and physical development of the municipality. The intention to alter the essence of the power over specific zoning-related applications, already delegated to the board of adjustment, must be expressed in language admitting no reasonable doubt of its purpose. Crater v. Somerset Cty, 123 N.J.L. 407, 414 (E. & A. 1939); Singleton v. Consolidated Freightways Corp., 64 N.J. 357 (1974).
*185 Have the courts permitted governing bodies and planning boards to "circumscribe or alter powers committed by statute to the board of adjustment"? Duffcon Concrete Products v. Cresskill, 1 N.J. 509, 515 (1949).
Judgment will be entered in favor of plaintiffs reversing the action of the board of adjustment, in the absence of proofs to meet the statutory test of "hardship," and because of the intervening of the planning board by the testimony of its president in the quasi-judicial function of the board of adjustment.