[No. 3431-1. Division One. January 3, 1977.]

JACK FLECK, *Respondent*, v. KING COUNTY, *Appellant*.

---

*Christopher T. Bayley, Prosecuting Attorney,* and *Robert I. Stier, Deputy,* for appellant.

*Moriarty, Long, Mikkelborg & Broz* and *Charles E. Yates,* for respondent.

CALLOW, J.—The defendant, King County, appeals from a judgment entered remanding the plaintiff Jack Fleck's petition for installation of a gasoline storage tank on his property to the King County Board of Appeals for reconsideration, and disqualifying a married couple on the board from participating in the reconsideration.

On May 16, 1974, Jack Fleck applied to the King County Department of Community Development, Building Division, for a permit to install a gasoline storage tank on his residential property located in King County. The application was refused on the ground that the proposed use was not compatible with the residentially zoned property. The plaintiff appealed to the King County Board of Appeals, which at that time consisted of seven members. Two of the seven, Edgar Opdycke and Eleanor Hunsinger, were husband and wife.

In the initial vote taken at the completion of a hearing, the board voted three in favor of issuance of the application, two were opposed to the application, and two abstained. Of the two abstentions, one was Edgar Opdycke, chairperson of the hearing, and Eleanor Hunsinger was one of the two voting in opposition to the application. After the vote a motion for reconsideration of the matter was made by the other abstaining member. Mr. Opdycke, as chairperson, allowed the matter to be reopened. In the vote that followed, the abstaining member other than Mr. Opdycke cast a dissenting vote, which placed the matter in a tie. As a result of the tie, Mr. Opdycke voted in opposition to the

motion, so that the final vote was four to three in opposition to the issuance of the permit.

On September 25, 1974, the plaintiff petitioned for a writ of mandamus to the Superior Court, a hearing was held, and the order from which the County now appeals was entered remanding the matter for reconsideration and disqualifying Mr. Opdycke and Ms. Hunsinger from participating on the ground that their marriage was an "entangling influence" in violation of the appearance of fairness doctrine.

It was stated in *Narrowsview Preservation Ass'n v. Tacoma*, 84 Wn.2d 416, 420, 526 P.2d 897, 901 (1974):

> [R]estrictions on the free and unhampered use of property imposed by planning and zoning compel the highest public confidence in governmental processes bringing about such action. Members of commissions with the role of conducting fair and impartial fact-finding hearings must, as far as practical, be open-minded, objective, impartial, free of entangling influences, capable of hearing the weak voices as well as the strong and must also give the appearance of impartiality. *Buell v. Bremerton*, 80 Wn.2d 518, 523, 495 P.2d 1358 (1972). The doctrine is applicable to show an interest which might have substantially influenced a member of the commission even if that interest did not actually affect him.

This tenet of the law known as the "appearance of fairness doctrine" has been enunciated in a number of Washington decisions. *See Fleming v. Tacoma*, 81 Wn.2d 292, 502 P.2d 327 (1972); *Chrobuck v. Snohomish County*, 78 Wn.2d 858, 480 P.2d 489 (1971); *Smith v. Skagit County*, 75 Wn.2d 715, 453 P.2d 832 (1969). The doctrine does not require a showing that actual influence was exerted to bring about the decision made, but only that some interest may have substantially influenced a board or commission member. *Byers v. Board of Clallam County Comm'rs*, 84 Wn.2d 796, 529 P.2d 823 (1974); *Narrowsview Preservation Ass'n v. Tacoma, supra. See Dana-Robin Corp. v. Common Council*, 166 Conn. 207, 348 A.2d 560 (1974). The administrative tribunals which perform judicial or quasi-judicial functions must be as above suspicion and reproach as courts them-

selves. *State ex rel. Barnard v. Board of Educ.*, 19 Wash. 8, 52 P. 317 (1898).[1] When the circumstances are such that the conduct of one member of a tribunal may have infected the independent decision-making process of others on the tribunal, the potential exists for the weakening of public confidence in the operation of the agency, and actions taken by boards, commissions, tribunals, or agencies under such a cloud must be disapproved. *Anderson v. Island County*, 81 Wn.2d 312, 501 P.2d 594 (1972); *Buell v. Bremerton*, 80 Wn.2d 518, 495 P.2d 1358 (1972). *See Josephson v. Planning Bd.*, 151 Conn. 489, 199 A.2d 690, 10 A.L.R.3d 687 (1964). The question must be answered whether "a disinterested person, having been apprised of the totality of a board member's personal interest in a matter being acted upon, [would] be reasonably justified in thinking that par-

---

[1] In *State ex rel. Barnard v. Board of Educ.*, 19 Wash. 8, 17-18, 52 P. 317, 320-21 (1898), the court stated: "The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts; in fact, the administration of justice through the mediation of courts is based upon this principle. It is a fundamental idea, running through and pervading the whole system of judicature, and it is the popular acknowledgment of the inviolability of this principle which gives credit, or even toleration, to decrees of judicial tribunals. Actions of courts which disregard this safeguard to litigants would more appropriately be termed the administration of injustice, and their proceedings would be as shocking to our private sense of justice as they would be injurious to the public interest. The learned and observant Lord Bacon well said that the virtue of a judge is seen in making inequality equal, that he may plant his judgment as upon even ground. Caesar demanded that his wife should not only be virtuous, but beyond suspicion; and the state should not be any less exacting with its judicial officers, in whose keeping are placed not only the financial interests, but the honor, the liberty and the lives of its citizens, and it should see to it that the scales in which the rights of the citizen are weighed should be nicely balanced, for, as was well said by Judge Bronson in *People v. Suffolk Common Pleas*, 18 Wend. 550:

" 'Next in importance to the duty of rendering a righteous judgment, is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge.'

"The reason that financial interest or near relationship to a litigant is held to be sufficient to recuse a judge is that it is to be presumed that self-interest or natural affection will unconsciously prejudice a judge and deprive the litigant of a fair trial."

tiality may exist?" *Swift v. Island County*, 87 Wn.2d 348, 361, 552 P.2d 175, 183 (1976).

It is our conclusion that a reasonable person, given the knowledge that Mr. Opdycke and Ms. Hunsinger were married, could not state with certainty that considerations not a part of the record, to wit, the maintenance of peace and tranquility in the marriage, or at the least, the avoidance of domestic controversy, *might* have influenced the vote of one or the other of these two board members. Reasonable persons would question whether the reaction of one spouse on an issue was fully independent of the action taken by the other when both sit on the same adjudicatory board. While the relationships between spouses may range from hostility to affection, from love to hate, an affinity of some sort is expected to exist between them. The trial court correctly held that the circumstances cast suspicion on the outcome of the vote and properly emphasized that only those matters considered openly on the record may play a part in a public commission's decision. *See Hill Homeowners Ass'n v. Zoning Bd. of Adjustment*, 129 N.J. Super. 170, 322 A.2d 501 (1974), *aff'd*, 134 N.J. Super. 107, 338 A.2d 824 (App. Div. 1975). A petitioner or litigant is entitled to a decision arrived at by the separate members of the body uncommitted, unallied, and unfettered at the commencement of their deliberations.

The contention that an examination into the motives of the board was improper is answered by *Fleming v. Tacoma, supra,* which recognized that under the appearance of fairness doctrine, not only must the proceedings of the hearing involved appear fair, but the motives of those conducting the hearings and voting must be above reproach. *See Low v. Madison*, 135 Conn. 1, 60 A.2d 774 (1948); Annot., 71 A.L.R.2d 568 (1960). That is not to say that it is appropriate for courts to initiate inquiries into the motives of administrative bodies that are not questionable from the face of the record. However, when, as here, the possibility of tainted incentives and flawed impulses is clear, actions taken by the body must be set aside. The doctrine should

not be limited to situations where blatant statements of advantage or influence have been made openly at a hearing, but must include those states of affairs where deliberations are blemished by the possibility of partiality or regard to self-interest. *Narrowsview Preservation Ass'n v. Tacoma, supra; Anderson v. Island County,* 81 Wn.2d 312, 501 P.2d 594 (1972); *Fleming v. Tacoma, supra. See Olley Valley Estates, Inc. v. Fussell,* 232 Ga. 779, 208 S.E.2d 801 (1974).

We are aware that the entangling influences previously disqualifying persons serving in quasi-judicial positions have been possible pecuniary links with a litigant. The appearance of fairness doctrine goes beyond pecuniary interests, however. The doctrine aspires to the maintenance of public confidence in the just, disinterested decisions of public agencies. The undesirable element sought to be excluded from agency decision making is an appearance to the public that both sides to an argument did not receive equal treatment. There is no evidence here of any interest of either of the two disqualified commissioners in the form of (1) prejudgment concerning issues of fact about the litigants; (2) partiality evidencing a personal bias or personal prejudice signifying an attitude for or against a party as distinguished from issues of law or policy; or (3) an interest whereby one of the commissioners stood to gain or lose by a decision either way. *See King County Water Dist. 54 v. King County Boundary Review Bd.,* 87 Wn.2d 536, 541, 554 P.2d 1060 (1976); *Buell v. Bremerton,* 80 Wn.2d 518, 495 P.2d 1358 (1972). The need to bring to bear disinterested minds upon public controversies requires that the doctrine encompass the situation before us. We extend the doctrine to include within its prohibitions service by married persons upon the same quasi-judicial board.

The judgment is affirmed.

WILLIAMS, C.J., and SWANSON, J., concur.