**GEORGE D. BALLARD,
BUILDER, INC.**

v.

**CITY OF WESTBROOK, et al.[1]**

Supreme Judicial Court of Maine.
Argued Sept. 9, 1985.
Decided Dec. 6, 1985.

---

1. The Planning Board of the City of Westbrook and the City's code enforcement officer are also named as parties defendant.

Zuckerman & Avaunt, Robert H. Avaunt (orally), Gray, for plaintiff.

Gagan & Desmond, James C. Gagan (orally), Richard A. Sullivan, Westbrook, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN, and SCOLNIK, JJ.

SCOLNIK, Justice.

The plaintiff, George D. Ballard, Builder, Inc., appeals from a judgment entered in the Superior Court (Cumberland County) on a referee's report that recommended judgment for the defendants. At issue were two rulings of the Westbrook Planning Board (Board). The Board denied the plaintiff's request for an extension of its approved site plan application for a multi-family development because the plaintiff failed to request an extension within one-year from the time of the site plan approval as required by the terms of the Westbrook Site Plan Review Ordinance (Ordinance). The Board also denied the plaintiff's reapplication for site plan approval on the ground that it was barred by the provisions of the City of Westbrook's (City) amended zoning ordinance. On appeal, the plaintiff contends, first, that its approved application was a pending proceeding protected by 1 M.R.S.A. § 302 (1979); second, the forfeiture provision of the Ordinance is invalid on its face and is a standardless delegation of power; third, the amendment to the City's zoning ordinance was not in effect at the time the plaintiff filed its subsequent application; and, fourth, that

the Board should be estopped from preventing the plaintiff's initially approved multi-family development. We disagree with these contentions and affirm the judgment.

The facts are as follows: The plaintiff seeks to develop a thirty-six acre parcel located in Westbrook. Its plan divided the lot into thirty-six lots; all but three of the lots would contain single family homes. The plaintiff planned to donate Lot 36, containing 14.7 acres, to the City as a park. Lot 18 included a single family residence with an apartment attached. On the remaining lot, Lot 35, the plaintiff planned to build three separate buildings, totalling fifteen dwelling units. Board approval of the plaintiff's plan was required under § 21–16 of the City's Subdivision Ordinance because a subdivision of the parcel was proposed. For economic reasons, the proposal submitted to the Board divided the property into two sections. The first section included twelve single family lots plus Lots 18, 35 and 36. On September 11, 1979, the Board, pursuant to § 21–54 of the Subdivision Ordinance, approved the subdivision plan for the first section. Because the proposed development of Lot 35 included plans for more than four multi-family units, § 19½–4(A) of the Ordinance required the plaintiff to submit a site plan application for Board approval. At the time the plaintiff initiated that approval process, Lot 35 was within an R–4 zone that permitted multi-family dwelling units. The Board approved the site plan on December 18, 1979. On May 22, 1980, the plaintiff obtained the final necessary State permit from the Department of Environmental Protection (DEP) for the development of Lot 35.

Meanwhile, on March 12, 1980, the City adopted an amendment to its zoning ordinance that created a new R–3 zone affecting the area where the plaintiff's land is located. The new zone eliminated multi-family use, restricting new development to single-family homes. The plaintiff received notice of the amendment shortly after its passage but it was not until June 22, 1981, that the City filed a copy of the amendment in the Cumberland County Registry of Deeds as was then required by 33 M.R.S.A. § 622–A (1978), *repealed by* 1981 Me.Laws. ch. 216 (effective date Sept. 18, 1981).

For unexplained reasons, Ballard did not request a construction permit for Lot 35 until the spring of 1981.[2] At that time, city officials informed the plaintiff that the site approval for Lot 35 had expired by the forfeiture terms of § 19½–7(D) of the Ordinance, which states that if substantial construction is not commenced within one year of site plan approval or an extension request is not made, that approval becomes void. The plaintiff did not appeal the city officials' determination that its approved site application was no longer valid. Instead, it asked the Board for a hearing to "clarify its rights regarding development of Lot 35." On May 5, 1981, the Board found that the plaintiff's approval had expired because it failed to commence substantial construction within the one year period following the December 18, 1979, site plan approval. The Board stated that the amended zoning ordinance would now apply if Ballard desired to continue its development. The plaintiff did not appeal the Board's "findings" that its approval had expired.

On May 8, 1981, the plaintiff requested an extension of the one-year limit for its approved site plan application. On June 17, 1981, the plaintiff also filed a reapplication for site plan approval of Lot 35. On June 23, 1981, the Board denied the plaintiff's request for an extension of site plan approval because whatever rights the plaintiff had to proceed with its development of Lot 35 expired when it failed to commence substantial construction or request an extension within the one year period from the date of site plan approval, which elapsed on December 18, 1980. The Board also denied

**2.** The Ordinance states that "[o]ne copy of the approved site plan shall be included in the application for a building permit." Westbrook, Me., Ordinances ch. 19½, § 19 ½–5(a)(4).

the reapplication on the ground that it was barred by the provisions of the amended zoning ordinance.

On July 22, 1981, the plaintiff filed a complaint in the Superior Court pursuant to Rule 80B of the Maine Rules of Civil Procedure.[3] The court, with agreement of the parties, referred the case pursuant to Rule 53(b)(1).[4] The case was submitted to the referee for decision on a stipulation of facts, exhibits and briefs.[5] The referee in his report recommended that judgment be entered for defendants. After a hearing, the Superior Court justice accepted the referee's report and entered judgment for the defendants. This appeal followed.

After maneuvering through the procedural maze of this appeal, we conclude that only three issues are presented for decision: first, whether the Board properly denied the plaintiff's extension request; second, whether the plaintiff's re-application was barred by the amended zoning ordinance; and third, whether the facts of this case estop the Board from denying the plaintiff's development of Lot 35. We address *seriatim* each of these issues.

### I.

On May 5, 1981, the Board informed the plaintiff that its approved site plan application had expired because of a failure to commence substantial construction within the one year period following the December 18, 1979, site plan approval. Section 19½-7(D) of the Ordinance provides:

> The approval of a site plan shall become void if substantial construction is not commenced within one (1) year of the date of such approval unless such time limit is extended by the Board.

Pursuant to § 19½-7(D), the plaintiff requested an extension on May 8, 1981, contending that "approval" of its site plan did not occur until May 22, 1980, the date on which its final State permit was obtained from the DEP, and thus its extension request made on May 8, 1981, was timely filed. The plaintiff contended, in the alternative, that even if it failed to request an extension within one year of approval, its development of Lot 35 was protected as a grandfathered proceeding under the provisions of 1 M.R.S.A. § 302 (1979). On June 23, 1981, the Board denied the plaintiff's request on the grounds that it was not seasonably filed in that "the one year period of approval of [its] Site Plan for the project as approved by the Planning Board on December 18, 1979 [had] expired" and that the development was not "grandfathered."

The plaintiff attacks the Board's denial of its extension request on several grounds. It contends that § 19 ½-7(D) is unenforceable because the words "approval" and "substantial construction" are void for vagueness, both on their face and as

---

**3.** Section 19½-8 of the Ordinance provides: "An appeal from any order, relief, or denial of the planning board may be taken by any party to superior court in accordance with the Maine Rules of Civil Procedure, Rule 80B."

**4.** We reiterate that a reference is not generally appropriate in cases requiring a determination whether the factual findings of an administrative decision are appropriately supported by evidence and whether the law was correctly applied. Rule 53(a) should only be invoked where such a procedure furthers the efficient and orderly handling of that particular case. *Bruk v. Town of Georgetown,* 436 A.2d 894, 896–97 (Me. 1981) (per curiam); *see also Hedberg v. Wallingford,* 379 A.2d 126, 127–28 (Me.1977). Because this case, however, involved complex legal issues, we conclude that the court's implicit find-

ing that a rule of reference furthered the efficient and orderly handling of the case was not an abuse of discretion.

**5.** What the parties have labeled as a "Stipulation of Facts" is their agreement regarding the contents of the record of proceedings before the Board pursuant to the requirements of Rule 80B(e). Rule 80B(e) provides that the parties shall agree on the record of the proceedings of the government agency being reviewed. In addition, "[t]he record shall include the application or other documents that initiated the agency proceedings and the decision and findings of fact that are appealed from, and the record may include any other documents or evidence before the governmental agency and a transcript or other record of any hearings."

applied by the Board. The plaintiff further claims that because the phrase "unless such time limit is extended by the Board" does not specifically state whether the request for extension has to be made within one year of the date of approval, the Ordinance's failure to provide guidance in this respect is a standardless delegation of authority. It also contends that the Board incorrectly interpreted the Ordinance as requiring that an extension request be made within one year from its site plan approval on December 18, 1979.

■ The meaning of terms or expressions in a zoning ordinance is a question of law for the court. *Putnam v. Town of Hampden*, 495 A.2d 785, 787 (Me.1985). The terms or expressions are construed reasonably with regard to both the objects sought to be obtained and to the general structure of the ordinance as a whole. *Robinson v. Board of Appeals, Town of Kennebunk*, 356 A.2d 196, 198 (Me.1976); *Moyer v. Board of Zoning Appeals*, 233 A.2d 311, 317 (Me.1967). Undefined terms should be given their common and generally accepted meaning unless the context clearly indicates otherwise. *Robinson v. Board of Appeals, Town of Kennebunk*, 356 A.2d at 199. Applying these principles, we find the plaintiff's assertions to be without merit.

■ First, the term "approval" as used in the Ordinance is not vague on its face. Even though "approval" is not defined in the Ordinance, its common and generally accepted meaning connotes favorable rather than negative *action. See In re Rooney*, 298 Mass. 430, 433, 11 N.E.2d 591, 592 (1937) ("The word 'approval' when it appears in our statutes generally means an affirmative sanction."); *Webster's Third New International Dictionary* 106 (3d ed.

1971). The plaintiff's contention that this term is facially vague is without merit.

■ We next turn to the issue whether § 19½–7(D) is invalid because the term "unless such time limit is extended by the Board" fails to inform whether the request for extension must be made within the one year period and fails to furnish standards to be applied to extension requests. The Ordinance does not state when the request for an extension must be filed or under what circumstances it may be granted. The plaintiff filed a request for extension on May 8, 1981, some five months after the one year period, following its site plan approval, had elapsed. The Board denied the request on the ground that the plaintiff's site plan approval had expired. Although the Ordinance does not expressly state that the extension request must be made within one year following the approval, it is apparent from the context of the Ordinance that an applicant must be diligent and request an extension within the one year period for which the approval remains viable. Otherwise, the Ordinance would allow the Board to extend an approval that had become void. *Cf. Camplin v. Town of York*, 471 A.2d 1035, 1038 (Me.1984) (court required to look to the ordinance itself for guidance of undefined terms; such terms should be given their common and generally accepted meaning unless context appears otherwise.)[6] Moreover, to construe the extension provision otherwise would allow a developer to be protected from zoning changes for an indefinite period greater than the one-year period provided in the Ordinance. The one year limitation is by no means unreasonable to ensure that, because of the concern against nonconforming uses, approved site plan developments are either acted upon diligently or eliminated. *E.g., Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450

---

6. Since the Board acted properly in not considering the plaintiff's request for an extension because it was not filed within the one year period, we need not address whether the Ordinance lacked adequate standards to guide a decision as to an extension request. We intimate no opinion on whether an absence of adequate standards would render invalid either the extension provision or the entire forfeiture provision of the Ordinance. *Cf. Fitanides v. Crowley*, 467 A.2d 168, 172 (Me.1983).

A.2d 475, 481 (Me.1982) (to qualify for "non-conforming status," a use must be actual and substantial).

■ Next, we address whether the term "approval" is vague as applied here. The Board concluded that the date of approval for purposes of determining the one year period within which a request for extension is required to be made, was the date of the Planning Board's approval on December 18, 1979. We conclude that the meaning of "approval" is clear and that the Board interpreted it correctly. The Board approved the plaintiff's application on December 19, 1979 because it acted on the merits of the proposal before it. That this constituted an approval is reinforced by other sections of the Ordinance. Section 19 ½–4 states that the elements of the applicant's site plan proposal must be "reviewed and approved by the planning board."[7] Section 19 ½–5(a)(2) imposes a time frame on the Board to act by either approving or disapproving a completed application.[8] The plaintiff nevertheless suggests that the effective date of Board approval is affected by § 19 ½–7(A)(5). That section provides:

Copies of applicable state approvals and permits: provided, however, that the board may approve site plans subject to the issuance of specified state licenses and permits in cases where it determines that it is not feasible for the applicant to obtain them at the time of site plan review.

This section, however, does not change the fact that Board approval occurred when it acted on the plaintiff's application on December 18, 1979.[9] Section 19 ½–7(A)(5) only provides a mechanism for the Board to approve a site plan application even though a developer has yet to obtain all the necessary state permits.

The plaintiff next argues that the term "substantial construction" is void for vagueness, both on its face and as applied. Section 19 ½–7(D) provides in part that a site plan approval "shall become void if substantial construction is not commenced within one (1) year of the date of such approval." Both parties fail to recognize, however, that neither aspect of this issue is before us. The only action that we review here pursuant to Rule 80B is the issue decided by the Board at its June 23, 1981, meeting—the plaintiff's request for an extension and reapplication. The issue whether the plaintiff's approved application had expired pursuant to the "substantial construction" clause was not before the Board at that meeting. Merely because the Board gratuitously reiterated its earlier "finding" that the plaintiff's approval had expired because of the failure to commence construction does not mean that that issue

---

7. Section 19½–4 of the Ordinance provides:
   **Approval required.**
   (a) All new construction of buildings having over three thousand one hundred (3,100) square feet of floor area for commercial, industrial or institutional use, or multifamily residential projects in excess of four (4) units, shall be subject to site plan review. No building permit shall be issued until the plans, drawings, sketches and other documents required under section 19½–7 herein have been reviewed and approved by the planning board in accordance with the criteria and standards specified in section 19½–6 herein.
   (b) Construction, site development and landscaping shall be carried out in substantial accord with the plans, drawings, sketches and other documents approved by the board, unless amended with board approval.

8. Section 19½–5(a)(2) of the Ordinance provides

(2) Within sixty (60) days of the receipt of a completed application, the board shall act to approve or disapprove the site plan unless a public hearing is held or unless an application is amended, in which case the board shall act within thirty (30) days of the date of such public hearing or amendment. The time within which the board must act may be extended for an additional thirty (30) days upon request by the applicant.
   If the board does not act to approve or disapprove the application within this period, the site plan shall be deemed to have been disapproved. If the board shall vote to disapprove an application, the owner or his authorized agent shall be notified in writing and the specific causes of disapproval shall be noted.

9. There is no suggestion that the Board conditioned its approval on the procurement of the necessary State permits.

was decided at the June 23, 1981, meeting. In fact, the plaintiff only filed its extension and reapplication requests after the Board determined on May 5, 1981, that its approval had expired.[10] Thus, since the "substantial construction" issue was not before the Board at its June 23, 1981, meeting, we have no occasion to decide whether the term is vague on its face or as applied.

## II.

We now turn to the issue whether the amended ordinance governs the plaintiff's reapplication despite the fact that the City did not file a copy of the amendment prior to the time that plaintiff filed such application. This application was filed on June 17, 1981. On March 12, 1980, the City amended its zoning ordinance, creating an R–3 single family zone that encompassed the area which includes Lot 35. The plaintiff received notice of the change shortly thereafter. The City did not file the amendment in the Registry of Deeds until June 22, 1981, as was then required by 33 M.R.S.A. § 662–A (1978), *repealed by* 1981 Me.Laws. ch. 216 (effective date Sept. 18, 1981). Section 662–A provided:

> Any municipality having in force or adopting any ordinance which relates to land control, including, but not limited to, zoning and subdivisions, shall *file* a certified copy of such ordinance in the registry of deeds in the county or registry district wherein such municipality is located and said municipality shall forth-

with transmit to said county or district registry of deeds any amendment or amendments to said ordinance.

> The registers of deeds in the several counties and registry districts shall provide suitable protection and access to said *filed ordinances* in the manner customarily used for official records, and shall note on an official record the date of filing of each ordinance and shall stamp each ordinance in a manner clearly showing the date of filing; and such matter shall be filed by name of municipality. Municipalities will not be required to pay a fee or charge for said filing.

(emphasis added).[11]

Section 622–A specifically directs a municipality to file zoning changes, but the statute is silent as to the consequences of a failure to file. To determine the consequences, we must discern the purpose of the filing requirement. *See Mundy v. Simmons,* 424 A.2d 135, 137 (Me.1980); *Dobbs v. Maine School Admin. Dist. No. 50,* 419 A.2d 1024, 1028 (Me.1980).

Municipalities are authorized by State law to adopt zoning ordinances provided that they comply with certain procedures. *See* 30 M.R.S.A. §§ 1917, 2151–2158, 4956–4966 (1978 & Supp. 1985–1986). Prior to 1973, there was no provision for the filing of zoning ordinances. The legislative history of § 662–A reveals that one of the purposes for its enactment was to provide a

---

10. Sometime in the spring of 1981, undesignated city officials informed the plaintiff that its construction permit request could not be fulfilled because the approval of its site plan application had expired. The plaintiff did not appeal the City's action. Instead, it asked the planning board to clarify plaintiff's rights to continue its development of Lot 35. There is nothing in the record before us that suggests that the planning board had authority to review the decision of other city officials. Nevertheless, on May 5, 1981, the Board agreed that the plaintiff's site plan approval had expired because of a failure to commence substantial construction within one year following the Board's approval that was granted on December 18, 1979. The plaintiff did not appeal this action of the Board. *See* M.R.Civ.P. Rule 80B(a).

11. When the Legislature repealed § 662–A, it did so under the heading "An Act to Require Availability of Municipal Ordinances," and at the same time, enacted a similar provision codified at 30 M.R.S.A. 2153(5) (Supp.1985 & 1986). 1981 Me.Laws ch. 216. Title 30 M.R.S.A. § 2153(5) provides:

    A municipality may enact ordinances by the following procedure:

    **5. Availability.** Each ordinance shall be on file with the municipal clerk and shall be accessible to any member of the public. Copies shall be made available to any member of the public, at reasonable cost, at the expense of the person making the request. Notice of availability of the ordinance shall be posted.

central location at the Registry of Deeds where a person could determine all the existing restrictions on a given piece of land. *See* 1 Legis.Rec. 650–54, 820–23, 914–15 (1973). As a filing statute, § 662–A's primary purpose was to provide notice. Thus, the City's failure seasonably to file a copy of the amendment did not affect its validity.[12]

■ In *Polk v. Axton,* 306 Ky. 498, 208 S.W.2d 497 (1948), the court suggested that a similar statute, which required the filing and recording of zoning ordinances "in the office of the clerk of the county court of such county in a manner easily accessible to the public and same shall be public records," was directory and not mandatory. *Id.* at 502, 208 S.W.2d at 500. The court stated that a

> [f]ailure to file a copy in the ... Clerk's office ... did not invalidate it. The sole purpose of the statutory requirement is to furnish to the public additional constructive notice of the zoning ordinance. Failure to comply with the statute would, at most, render the ordinance unenforceable against one without notice.

*Id.* at 502–503, 208 S.W.2d at 500. We agree with the reasoning in *Polk.* Because the plaintiff had actual notice of the amendment, it cannot complain of the City's failure seasonably to file a copy of the amendment in the Registry of Deeds.[13]

### III.

Next, the plaintiff asserts that the Board is equitably estopped from denying its multi-family development of Lot 35 under the expired site plan approval granted by the Board on December 18, 1979. Assuming without deciding that under certain circumstances a developer may acquire rights by estoppel against a planning board, it has not done so in this case. *See Maine School Admin. Dist. No. 15 v. Raynolds,* 413 A.2d 523, 533 (Me.1980) (in appropriate circumstances, equitable estoppel may be invoked against a governmental entity).

■ We said in *Shackford & Gooch, Inc. v. Town of Kennebunk* that: "Proper application of the doctrine of equitable estoppel rests on a factual determination that the declarations or acts relied upon must have induced the party seeking to enforce the estoppel to do what resulted to his detriment, and what he would not otherwise have done." 486 A.2d 102, 105–106 (Me.1984) (quotations omitted). If one induces another to believe what is untrue and to act in reliance on that untruth, he may not later assert the truth. *Id.* at 106. Furthermore, the reliance upon which the estoppel is claimed must have been reasonable. *Roberts v. Maine Bonding & Casualty Co.,* 404 A.2d 238, 241 (Me.1979).

■ The plaintiff argues that it believed it was given two years to commence site plan development. Furthermore, it asserts that it donated a 14.7 acre lot to the City as a park and expended substantial money and effort on the subdivision project in reliance upon that belief and never intended to abandon it. There is nothing before us, however, that suggests that the Board misled the plaintiff about the amount of time he had to begin construction at Lot 35.[14] Nor is there any suggestion in the

---

**12.** The plaintiff's reliance on *Shelton v. City of Bellevue,* 73 Wash.2d 28, 435 P.2d 949 (1968) is misplaced. In *Shelton,* the court indicated that strict compliance with the procedural requirements of filing that were part of the state regulatory scheme for enacting zoning ordinances was necessary. *Id.* at 37, 438 P.2d at 954. Section 662–A, however, was not part of the statutes mandating the procedures that a municipality must follow *to enact* a zoning ordinance. Rather, it was placed in chapter 11, subchapter II, title 33 of the Maine Revised Statutes Annotated that encompasses records which are required to be either recorded or filed in the Registry of Deeds office. *See* 33 M.R.S.A. §§ 651–669 (1978).

**13.** Since the plaintiff had actual notice we need not decide what effect the failure to file the zoning amendment would have on one who had no notice.

**14.** The plaintiff asserts that he believed he had two years to *commence* construction. The only stipulated fact in regard to a time frame for construction states that the plaintiff told the Board that the project would be *complete* in two

record that the plaintiff relied on its belief that "approval" as used in § 19 ½–7(D) did not occur until the final State permit was obtained. Instead, the plaintiff was either unaware of or ignored the forfeiture provisions of the Ordinance.[15] Accordingly, we conclude that the facts do not support an estoppel claim against the Board.

## IV.

 Finally, the plaintiff argues that the "grandfather" provisions of 1 M.R.S.A. § 302 (1979) [16] apply here so as to prevent the Board from denying plaintiff's development of Lot 35. This contention is entirely without merit. It is not disputed that when the Board denied the plaintiff's extension request, it did so pursuant to the relevant terms of § 19 ½–7(D). Nor is it disputed that § 19 ½–7(D) was in effect when the plaintiff filed its initial application for site plan approval in the fall of 1979. Thus, the plaintiff had its initial site plan application governed by the provisions of the ordinances in effect at the time it was filed. That is all that § 302 requires. Furthermore, it was not the City's amendment to its zoning ordinance that terminated the plaintiff's approved application. Rather, it was by the terms of § 19 ½–7(D) of the site plan ordinance that the application became void.

It is not disputed that when the plaintiff filed its reapplication on June 17, 1981, the Board considered that application pursuant to the terms of the ordinances then in effect, which included the amended zoning ordinance. All that § 302 requires is that

the plaintiff's application be governed by the respective ordinances in effect at the time the application was filed. That is precisely what took place here. Thus, the "grandfather" provisions of § 302 are inapplicable to this case.

The entry is:

Judgment affirmed.

All concurring.

years. Nowhere in the stipulation of facts did the Board indicate that the provisions of § 19½ –7(D) would be waived.

15. Cf. *Gross v. City of Riviera Beach,* 367 So.2d 648 (Fla.Dist.Ct.App.), *cert. denied,* 378 So.2d 345 (Fla.1979). In *Gross,* after foreclosing, a bank allowed building construction to cease for over a one-year period resulting in the lapse of a building permit. Intervening zoning changes did not allow for a new permit. The bank raised an equitable estoppel argument because the building was 90% completed but the court rejected it, noting that "when the owner himself by his own conduct creates the exact hardship

which he alleges to exist, he certainly should not be permitted to take advantage of it." *Id.* at 651 (quoting *Josephson v. Autrey,* 96 So.2d 784, 789 (Fla.1957)).

16. Section 302 provides in pertinent part:
Actions and proceedings pending at the time of the passage or repeal of an Act or ordinance are not affected thereby. For the purposes of this section, a proceeding shall include but not be limited to petitions or applications for licenses or permits required by law at the time of their filing.