## Marjorie GERALD

### v.

## TOWN OF YORK, et al.

Supreme Judicial Court of Maine.

Argued March 21, 1991.

Decided April 17, 1991.

Anne H. Jordan (orally), Ralph W. Austin, Jensen, Baird, Gardner & Henry, Kennebunk, for plaintiff.

E. Stephen Murray, John C. Bannon, Elaine L. Clark (orally), Murray, Plumb & Murray, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, COLLINS and BRODY, JJ.

BRODY, Justice.

Marjorie Gerald appeals from a decision and order entered by the Superior Court (York County, *Brodrick, J.*) affirming a decision of the Town of York Planning Board ("Planning Board") that denied her application for a wetlands permit. On appeal, Gerald contends, as she did before the Superior Court, that the Planning Board erred as a matter of law in concluding that her request for a permit to improve her road is not allowed under section 3 of the York Beach Village Corporation Wetlands Permit Ordinance ("Wetlands Permit Ordinance").

Gerald owns property located in the Town of York upon which she operates a campground. The history of Gerald's use of the property dates back to October 2, 1977 when she first applied to the Planning Board for permission to construct the campground. At the time of the application, campgrounds were "permitted uses" under the York Beach Shoreland Zoning Ordinance ("Zoning Ordinance") and the Planning Board approved Gerald's application. A few weeks later, the Zoning Ordi-

nance was amended to delete campgrounds from the list of permitted uses.

■ Gerald did not apply for a building permit to begin actual construction of the campground until December, 1983. The York Code Enforcement Officer ("CEO") denied Gerald's application for a building permit on the grounds that the campground was no longer a permitted use and Gerald did not have an application for a building permit pending at the time the Zoning Ordinance was amended. On February 8, 1984, the Board of Appeals reversed the CEO's decision finding that Gerald did have an application pending at the time the ordinance was amended and that Gerald's proposed use of the property as a campground is "grandfathered" under the Zoning Ordinance. The Board of Appeals instructed the CEO to issue a building permit allowing Gerald to construct 46 camp sites, a service building, bathroom and shower facilities, an office building and a building for patron services. The Town of York did not appeal this decision and the Board's February 8, 1984 findings are res judicata. Gerald did not complete construction of the buildings on her property until October, 1989.[1]

On January 25, 1989, Gerald applied to the Planning Board for a permit under the Wetlands Permit Ordinance to place approximately 2,400 cubic yards of fill to improve the road leading to her campground. The road runs within 100 feet of a protected wetland.[2] The Planning Board denied Gerald's application on the grounds that section 3 of the Wetlands Permit Ordinance allows wetlands permits to be issued only for uses expressly listed as "permitted uses" under the Zoning Ordinance.[3] The Planning Board made no findings of fact regarding the environmental impact of Gerald's proposal. On December 13, 1989, the York Zoning Board of Appeals upheld the Planning Board's decision and Gerald's wetlands permit was formally denied.

Gerald filed a timely notice of appeal in the Superior Court pursuant to M.R.Civ.P. 80B. In her complaint, Gerald contends that section 3 of the Wetlands Permit Ordinance allows permits to be issued not only for uses expressly listed in the Zoning Ordinance as "permitted uses" but also legal "nonconforming uses" which are also permitted under the Zoning Ordinance.[4] The court rejected Gerald's contention finding that section 3 clearly and unambiguously limits uses allowed under the Wetlands Permit Ordinance to uses expressly listed as "permitted uses" under the Zoning Ordinance. The court concluded that the per-

1. The Town contends that Gerald's use is not a legal nonconforming use because it was not "actual and substantial" during the twelve-year period between October, 1977 and October, 1989. *Seven Islands Land Co. v. Maine Land Use Reg. Comm'n*, 450 A.2d 475, 481 (Me.1982). We are satisfied that as of January 25, 1989, the date Gerald applied for a wetlands permit to improve the road leading to her campground, Gerald's use of the property as a campground had acquired the status of a legal nonconforming use.

2. Section II of the Wetlands Permit Ordinance provides:
 This ordinance shall apply to all bogs, marshes, wetlands and swamps and to all land areas within 100 feet, horizontal distance, of the normal high water mark of any wetland, pond, river, creek, brook, bog, marsh or swamp as defined within the limits of the York Beach Village Corporation.

3. Section IV of the Zoning Ordinance provides that the "permitted uses" for the relevant zoning district are:
 1. One family dwellings;

2. Hotels, motels and tourist homes;
3. Restaurants, with maximum seating capacity of 75 people, serving food within the structure; and
4. Churches and places of worship of any recognized denomination or sect.

4. Section III E of the Zoning Ordinance provides in pertinent part:

*Non–Conforming Uses*
1. Any lawful use of buildings, structures, premises, land or parts thereof existing at the effective date of this ordinance or amendments thereto and not in conformance with the provisions of this ordinance shall be considered to be a non-conforming use.
2. Any non-conforming use may continue and may be maintained, repaired and improved. No such non-conforming use may be expanded, changed to another non-conforming use or renewed after it has been discontinued for a period of 12 calendar months or more, without a permit from: Shoreland District Planning Board; Residential and Commercial District Board of Appeals.

mit was properly denied and Gerald appealed.

On appeal Gerald contends that the Planning Board and the court erred as a matter of law in concluding that section 3 of the Wetlands Permit Ordinance allows permits to be used only for uses expressly listed as "permitted uses" under the Zoning Ordinance. We agree.

 The meaning of terms or expressions in an ordinance is a question of law for the court. *Ballard v. City of Westbrook*, 502 A.2d 476, 480 (Me.1985). The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole. *Id.* On appeal, the construction of terms or expressions in an ordinance is given de novo review. *See id.*

 Section 3 of the Wetlands Permit Ordinance defines the types of uses for which wetlands permits may be issued. Section 3 provides:

Permitted Uses

Uses as permitted under the Zoning Regulations of the York Beach Village Corporation and Shoreland Zoning.

The Planning Board found that section 3 must be construed to allow only uses expressly listed as "permitted uses" in the Zoning Ordinance. In affirming this finding the court reasoned that the phrase "permitted use," which appears in the caption of section 3, is a common and frequently used expression in zoning law and refers to those narrowly defined uses listed in a town's zoning regulations. By contrast, the court reasoned, nonconforming uses are uses other than "permitted uses" which are lawful only because they predate the ordinance but are, nonetheless, external to the uses permitted under the zoning regulations. The court's narrow reading of section 3 assumes that the policy of zoning in general is to gradually or eventually eliminate nonconforming uses as speedily as justice will permit. *Keith v. Saco River Corridor Comm'n*, 464 A.2d 150, 154 (Me. 1983).

The policy of zoning in general is not the determining factor in the context of this case. We find that the construction of section 3 adopted by the Planning Board and the court clearly goes beyond what is reasonable with regard to the objectives and structure of the Wetlands Permit Ordinance. The stated objectives of the Wetlands Permit Ordinance are "to further the maintenance of safe and healthful conditions, prevent and control water pollution and to establish flood proofing provisions." [5] Among other things, the Ordinance provides that "no construction will alter rivers, streams or brooks without a permit" and "no materials of any kind shall be present which, when deteriorated, will contaminate ground waters." [6] In light of

---

**5.** Section 1 of the Wetlands Permit Ordinance provides:

*Purpose*

The purposes of this Ordinance are to further the maintenance of safe and healthful conditions, prevent and control water pollution and to establish flood proofing provisions.

**6.** Section 4 of the Wetlands Permit Ordinance provides:

*Regulations*

1. Buildings constructed for human habitation shall be connected to public sewer and water.

2. Surface drainage shall be controlled so that removal of surface waters will not adversely affect neighboring properties or the public storm drainage system or public property.

3. Removal (filling shall not constitute removal) of all swamp, marsh or bog waters shall be controlled so that the reduction of a water holding area will not adversely affect neighboring properties or the public storm drainage system or public property.

4. No construction will alter rivers, streams or brooks without a permit from the Commissioner, Department of Inland Fisheries and Wildlife. (Title 12, Section 2206 from the laws relating to, and administered by, the Dept. of Inland Fisheries and Wildlife.)

5. No materials of any kind shall be present which, when deteriorated, will contaminate ground waters.

6. No building shall be built so that any portion of said building shall be below the seasonal high-water table as determined by tests at the location, unless it can be shown that adequate drainage will be provided. Footings and other construction that are solely for the support of said buildings are exempt from the above regulation.

its stated objectives and structure, we conclude that the Wetlands Permit Ordinance is neutral with respect to "permitted uses" and "nonconforming uses" and will tolerate both as long as the uses do not adversely impact protected wetlands. The phrase "permitted uses" in the caption of section 3 is not indicative of an intent to limit uses permitted under the Wetlands Permit Ordinance to uses expressly listed as "permitted uses" under the Zoning Ordinance. The caption merely indicates that the subject of section 3 is uses permitted under the Wetlands Permit Ordinance. The operative language of section 3 provides that uses permitted under the Wetlands Permit Ordinance are the same as the "uses as permitted under the Zoning Regulations of the York Beach Village Corporation and Shoreland Zoning." Because both "permitted uses" and legal "nonconforming uses" are permitted under the Zoning Ordinance, the Planning Board and court erred in interpreting section 3 to allow only uses expressly listed as "permitted uses" under the Zoning Ordinance. Accordingly, the matter must be remanded to the Planning Board for findings on the environmental impact of Gerald's proposal and for findings on the issue of whether Gerald's proposal constitutes an improvement of a legal nonconforming use that would be permitted under the Zoning Ordinance or an expansion or enlargement of a nonconforming use that would not.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to remand to the Planning Board for further proceedings consistent with the opinion herein.

All concurring.